# Exhibit B

Order (i) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (ii) Approving Procedures for Supplemental Corporate Creditor Distributions, and (iii) Granting Related Relief [ECF 7747]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## ORDER (I) AUTHORIZING SUPPLEMENTAL
## DISTRIBUTION TO ELIGIBLE CORPORATE CREDITORS,
## (II) APPROVING PROCEDURES FOR SUPPLEMENTAL CORPORATE
## CREDITOR DISTRIBUTIONS, AND (III) GRANTING RELATED RELIEF

Upon the joint motion (the "Motion")[2] of the post-effective date debtors (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors"), the members of the ad hoc committee of corporate creditors (the "Ad Hoc Committee of Corporate Creditors"), and Coinbase Inc., ("Coinbase," together with the Post-Effective Date Debtors and the Ad Hoc Committee of Corporate Creditors, the "Parties") for entry of an order (this "Order"), pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 9019 (i) authorizing the Post-Effective Date Debtors to make Supplemental Corporate Creditor Distributions to Eligible Corporate Creditors (as defined in the Motion), (ii) approving the Supplemental Distribution Election Procedures for Eligible Corporate Creditors, (iii) approving the settlement of the Corporate Creditor Motion as between the Parties, and (iv) granting related relief, all as more fully set forth in the Motion; and this Court

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Post-Effective Date Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Post-Effective Date Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (the "Hearing") before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement is reasonable and was negotiated at arms' length and in good faith, and the Settlement Term Sheet attached hereto as **Exhibit 1** is approved; *provided* that the compensation for the Ad Hoc Committee of Corporate Creditors described in section 7 of the Settlement Term Sheet is not approved.  For the avoidance of doubt, the Settlement does not include any admission by any Party, including as to what the Plan requires or of any wrongdoing relating to distributions to Corporate Creditors or any other party under the Plan.

3. The Supplemental Corporate Creditor Distributions are authorized and approved and shall be funded with Liquid Cryptocurrency (or the proceeds thereof) from the Disputed and Contingent Claims Reserve.

4. The Post-Effective Date Debtors are authorized to enter into the Supplemental Coinbase Agreement attached hereto as **Exhibit 2**.

5. In the event of any inconsistency between the Motion or this Order and the Settlement Term Sheet, this Order shall control.

6. All objections, including without limitation, made by any party to the Settlement, that have not been withdrawn, waived, settled, or specifically addressed in this Order and all reservations of rights included in any such objections, are hereby overruled on the merits and any objections to the Motion, the Settlement, the Supplemental Corporate Creditor Distributions, compensation for the Ad Hoc Committee of Corporate Creditors and the related relief not timely raised are waived. Accordingly, the entry into the Settlement by the Parties is authorized and ratified, and the Parties are directed to perform all of the terms of the Settlement as modified by this Order. As contemplated by the Settlement Term Sheet, this Order resolves the Corporate Creditor Motion and the Australian Distribution Motion.

7. The Notice of Supplemental Distribution to Eligible Corporate Creditors attached hereto as **Exhibit 3** is approved, including the releases set forth therein. For the avoidance of doubt, to the extent an Eligible Corporate Creditor is a Holder of any Claim that is not currently Allowed under the Plan, the Post-Effective Date Debtors will send such creditor the Notice of Supplemental Distribution as soon as reasonably practicable after such Claim is Allowed; *provided*, that if such Claim is not Allowed at the time the Standing Instruction (as defined in the Supplemental Coinbase Agreement) is given to Coinbase, such creditor shall receive the

Supplemental Cash Distribution on account of such Claim, but for the avoidance of doubt, the Liquid Cryptocurrency on account of such Claim will not be converted to Cash until after such Claim is Allowed, at which time the Post-Effective Date Debtors will take the steps for Supplemental Cash Distributions set forth in the Motion.

8.     Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform the Settlement as embodied in the Settlement Term Sheet and modified by this Order, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Term Sheet and this Order.

9.     In furtherance of this Order, the Settlement Term Sheet and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties thereto in a writing signed by such Parties, and in accordance with the terms thereof, without further order of the Court, provided such modification, amendment, or supplement is not material.

10.    The failure to mention any provision of the Settlement in this Order or the Motion shall not impair its efficacy, it being the intent and effect of this Order that the Settlement and the compromises and agreements contained therein are approved in all respects and all relief contemplated by the Settlement is hereby granted.

11.    Counsel to the Ad Hoc Committee of Corporate Creditors may file, by October 17, 2024, an application for payment of fees that must include detailed and itemized time records reflecting the work performed from the time of its engagement through the execution of the Settlement Term Sheet.

12.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any

4

particular claim against the Debtors; (b) a waiver of the Post-Effective Date Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Post-Effective Date Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Post-Effective Date Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Post-Effective Date Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Post-Effective Date Debtors' rights to subsequently dispute such claim.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rules and the Local Rules are satisfied by such notice.

14.    Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.    The Post-Effective Date Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  October 4, 2024
        New York, New York

**/s/ Martin Glenn**
MARTIN GLENN
Chief United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Settlement Term Sheet**

# SETTLEMENT TERM SHEET

### *Celsius Network LLC, et. al.,*
### Case No. 22-10964-MG (Bankr. S.D.N.Y.)

THIS SETTLEMENT TERM SHEET (THE "<u>TERM SHEET</u>") CONTAINS THE TERMS AND CONDITIONS OF A PROPOSED SETTLEMENT OF THE MEDIATION TOPICS (THIS "<u>SETTLEMENT</u>") BY AND BETWEEN POST-EFFECTIVE DATE DEBTORS, COINBASE, AND THE AD HOC COMMITTEE OF CORPORATE CREDITORS, AS SUCH PARTIES ARE DEFINED BELOW (COLLECTIVELY, THE "<u>PARTIES</u>"). TERMS CAPITALIZED BUT NOT DEFINED HEREIN SHALL HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE *JOINT STIPULATION AND AGREED ORDER BETWEEN THE POST-EFFECTIVE DATE DEBTORS, COINBASE, THE LITIGATION ADMINISTRATOR, AND THE AD HOC COMMITTEE OF CORPORATE CREDITORS FOR APPOINTMENT OF A MEDIATOR* [DOCKET NO. 7588] OR THE *MODIFIED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES (CONFORMED FOR MININGCO TRANSACTION)* [DOCKET NO. 4289], AS APPLICABLE.

1. <u>Economic Terms</u>: The Parties acknowledge and agree that this Term Sheet is subject to Coinbase's and the Post-Effective Date Debtors' agreement on economic terms for a supplemental agreement with Coinbase by no later than August 22, 2024 or such later date as Coinbase and the Post-Effective Date Debtors may agree, which agreement the Post-Effective Date Debtors and Coinbase agree to pursue in good faith.

2. <u>Settlement</u>: The Corporate Creditor Motion shall be resolved as follows:

    (a)   Any Eligible Corporate Account Holder (as defined below) will receive the option to receive either (a) the Liquid Cryptocurrency that they would have received under the Plan on the Effective Date (that is, for creditors who are not in the Convenience Class, an amount that would have provided them with approximately 57.87% recovery on their Claims, and for creditors who are in the Convenience Class, an amount that would have provided them with approximately 70% recovery on their Claims, as applicable, in each case using prices for BTC and ETH as of January 16, 2024 as set forth in the Notice of Effective Date [Docket No. 4298] (the "<u>Supplemental Cryptocurrency Distribution</u>"), or (b) an amount of Cash (the "<u>Supplemental Cash Distribution</u>") that provides such Eligible Corporate Account Holder with total consideration (including any past distribution of Cash received under the Plan) equal to the Corporate Cryptocurrency Price (as defined below). Eligible Corporate Account Holders who are in the Convenience Class will not have an election and will receive the Supplemental Cash Distribution. This distribution will be referred to as the "<u>Supplemental Corporate Creditor Distribution</u>." Any supplemental distributions will be subject to the setoffs discussed *infra*.

    (b)   The "<u>Corporate Cryptocurrency Price</u>" shall be equal to the actual Cash proceeds received when the Post-Effective Date Debtors sell the BTC and ETH allocated to Eligible Corporate Account Holders at market prices following the Election

1

Deadline as set forth herein (less setoffs that are calculated at the BTC Average Price and the ETH Average Price as set forth herein). Solely for those Eligible Corporate Account Holders who settled withdrawal preference exposure and a setoff of their distributions under the Plan was taken, the Corporate Cryptocurrency Price will be calculated using the prices for BTC and ETH in effect at the time such setoff was taken (instead of the BTC Average Price and the ETH Average Price).

(c)     "Eligible Corporate Account Holder" means any Account Holder who is a non-individual (i.e., anyone who is not a natural person such as a trust, LLC, partnership, corporation, or other non-individual entity) that is organized in a Supported Jurisdiction (as defined in the Distribution Addendum) to which Coinbase makes distributions under the existing Distribution Addendum with Coinbase (an "Eligible Country").[1]

(d)     "BTC Average Value" means the average of the closing price for BTC over the period from February 22, 2024 through August 12, 2024, i.e. $64,597;

(e)     "ETH Average Value" means the average of the closing price for ETH over the period from February 22, 2024 through August 12, 2024, i.e. $3,341;

3.     Election/Initial Implementation Process:

(a)     The Parties will file a joint motion to approve a distribution to Eligible Corporate Account Holders (the "Distribution Motion"), which Distribution Motion will fully resolve the Corporate Creditor Motion and the Australian Corporate Creditor Distribution Motion (which will be held in abeyance until the Distribution Motion is approved).

(b)     The Distribution Motion will seek an order approving the Supplemental Corporate Creditor Distribution (such order being in form and substance reasonably acceptable to the Parties) and the following election process:

i.     Once the Distribution Motion is granted, the Post-Effective Date Debtors will provide an election form (the "Election Form") to all Eligible Corporate Account Holders, who will have 30 days to elect whether to receive the Supplemental Cryptocurrency Distribution or the Supplemental Cash Distribution. Eligible Corporate Account Holders who do not make any election by the end of the 30-day period will default to the Supplemental Cash Distribution. The Post-Effective Date

---

[1]     [A list of Eligible Countries will be attached to the final term sheet prior to filing of approval motion.] Corporate Account Holders that are organized in a country that is not an Eligible Country would never have been able to receive Liquid Cryptocurrency under the Plan through the provisions permitting Cash distributions to creditors in countries without a Distribution Agent, and so these corporate Account Holders will not receive any distribution under the Settlement.

Debtors will make best efforts to send out the form within 5 business days from court approval of the Distribution Motion.

ii. Eligible Corporate Account Holders who timely elect for the Supplemental Cryptocurrency Distribution (the "Coinbase Opt-In") will have to successfully complete Coinbase's onboarding process (unless such Eligible Corporate Account Holder has an existing eligible Coinbase institutional account, in which case such account shall be used for distribution purposes, subject to the terms of section 3(b)(vi)), and there is no guarantee as to the precise timing of that process or whether a creditor will ultimately receive approval from Coinbase. At the end of the Election Period, the Post-Effective Date Debtors shall provide to Coinbase the valid email addresses of all electing creditors who have made the Coinbase Opt-In (the "Opt-In Emails"). The Post-Effective Date Debtors will provide all Opt-In Emails to Coinbase simultaneously. Coinbase shall use commercially reasonable efforts to deliver an invitation to electing creditors within 14 days of the date that Coinbase receives the Opt-In Emails from the Post-Effective Date Debtors. Electing creditors must initiate the onboarding process within 14 days of the date such creditors receive an invitation to onboard to Coinbase. Creditors will have 30 days to provide all initial onboarding materials to Coinbase following Coinbase's initial request for such materials (it being understood that if Coinbase has supplemental requests after reviewing the initial onboarding materials, those may be requested and provided after this 30 day period expires). Creditors must respond to any supplemental request(s) from Coinbase within 14 days of any such supplemental request(s). As part of making the Coinbase Opt-In, creditors will have to agree to release and hold harmless both Coinbase, the Plan Administrator and the Post-Effective Date Debtors (and their respective agents and advisors) for (i) any change in market prices between the time of the Distribution Motion and when the Supplemental Cryptocurrency Distribution is made and (ii) any claim related to such Creditor's ability to onboard to Coinbase's platform and/or the timing of such onboarding, subject to customary exclusions for gross negligence and willful misconduct (it being understood and agreed by the parties to this Term Sheet that the facts and circumstances giving rise to the Corporate Creditor Motion and the Australian Distribution Motion did not give rise to liability for gross negligence or willful misconduct on the part of the released parties).

iii. Eligible Corporate Account Holders who either are rejected from onboarding by Coinbase or are dropped from the onboarding process pursuant to section 4(e) will receive an amount of Cash equal to the Corporate Cryptocurrency Price; *provided, however*, that nothing herein shall alter the Post-Effective Date Debtors' obligation to hold cryptocurrency for customers with withdrawal preference exposure as set forth in Art. IV.K.1 of the Plan. Each Eligible Corporate Creditor

subject to this subsection shall provide the Post-Effective Date Debtors with their payment instructions for a Fiat distribution. Within fourteen (14) days after receiving such payment instructions, the Post-Effective Date Debtors will use best efforts to initiate the procedures set forth in paragraph (e) below with respect to such Eligible Corporate Creditor.

iv. Each eligible Corporate Account Holder who elects for the Supplemental Cash Distribution will have the option to elect to receive its distribution of Cash through (a) Hyperwallet, (b) check, or (c) wire transfer. In each case, the Plan Administrator will use commercially reasonable efforts to honor such election; *provided* that the Plan Administrator cannot guarantee that any particular option will be available for any particular individual creditor (for example, and without limitation, a creditor may be banned by PayPal, or unable to cash a $USD check in their jurisdiction). Creditors will have to provide further information depending on the type of Cash distribution elected (for example, an appropriate mailing address for a check, basic KYC information for a beneficial owner for Hyperwallet, or wire transfer instructions for a wire transfer). The Plan Administrator shall use best efforts for wire transfer distribution attempts to be made within seven (7) to fourteen (14) days after a creditor provides accurate wire information. Wire transfer distributions may be delayed, among other causes, if the provided information is not accurate or as a result of restrictions enforced by beneficiary or intermediary banks.

v. The Post-Effective Date Debtors will use best efforts to make an initial attempt of the Supplemental Cash Distribution within 14 days of the end of the election period and the submission of required information to the Post-Effective Date Debtors, but there is no guarantee as to the precise timing of that process, given that creditors will have to supply correct payment information in order to get paid, and the creditor's beneficiary bank, or intermediary bank, may reject or delay these payments.

vi. Creditors will have to agree to release and hold harmless the Plan Administrator and the Post-Effective Date Debtors (and their respective agents and advisors) for any change in market prices between the time of the Distribution Motion and when the Supplemental Cash Distribution is made.

vii. The Election Form will include requests for the Eligible Corporate Account Holders to provide, and such holders shall provide, the following information, as applicable:

1. If the Eligible Corporate Account Holder elects the Supplemental Cryptocurrency Distribution, whether the Eligible Corporate Account Holder has an existing eligible Coinbase institutional account, and if so, that Coinbase and the Plan

4

Administrator are authorized and directed to share data between themselves regarding such Eligible Corporate Account Holder for the purpose of effectuating the distribution; provided that such Eligible Corporate Account Holders agree to participate in any ordinary course account matching or KYC/AML refresh that Coinbase may require as necessary to render those accounts eligible to receive distributions.

2. If the Eligible Corporate Account Holder elects the Supplemental Cash Distribution:

    a. To receive such distribution by check, the address to which the check should be sent;

    b. To receive such distribution by wire, the detailed instructions needed by the Plan Administrator to effectuate the wire transfer; or

    c. To receive such distribution by Hyperwallet, basic KYC information for at least one beneficial owner.

(c) Upon filing the Distribution Motion, the Post-Effective Date Debtors will earmark an amount of Liquid Cryptocurrency from the disputed claims reserve equal to the amount of Liquid Cryptocurrency needed if every eligible creditor elects for the Supplemental Cryptocurrency Distribution. That Liquid Cryptocurrency will be distributed to those creditors that affirmatively elect the Supplemental Cryptocurrency Distribution, successfully onboard with Coinbase, and meet other requirements.

(d) The Post-Effective Date Debtors will sell at market prices the Liquid Cryptocurrency allocated to Eligible Corporate Account Holders who do not affirmatively elect for the Supplemental Cryptocurrency Distribution (or otherwise are unable to receive the Supplemental Cryptocurrency Distribution as set forth in this Term Sheet, including those that do not successfully onboard at Coinbase or are "dropped" from the Supplemental Cryptocurrency Distribution as set forth in this Term Sheet), and send the proceeds to those creditors. More specifically, the Post-Effective Date Debtors will use best efforts to sell the Liquid Cryptocurrency for each applicable Eligible Corporate Account Holder within seven (7) to fourteen (14) days of the anticipated first distribution for each Eligible Corporate Account Holder (for wire transfers and Hyperwallet transfers, a test transaction shall be completed prior to the Post-Effective Date Debtors selling the cryptocurrency to ensure that the sale takes place as soon as practicable prior to a successful Cash distribution). Upon completing an Eligible Corporate Account Holder's distribution, the Plan Administrator shall provide a notice of successful distribution, which shall notify such creditor of the amount of cryptocurrency sold and the market price of the sale for such distribution.

(e)     For the avoidance of doubt, this Settlement will settle the dispute related to the initial distribution made available for all eligible creditors as of the Effective Date; for subsequent distributions, a new distribution record date will be set under the Plan and distributions will be made on that basis.  To the extent an Eligible Corporate Account Holder successfully onboards with Coinbase, that subsequent distribution will be made in Liquid Cryptocurrency to the extent Coinbase is still an active Distribution Agent.

(f)     <u>Illustration of Supplemental Corporate Creditor Distribution</u>:  If an Eligible Corporate Account Holder was entitled to receive 1 BTC and 10 ETH under the Plan, but received approximately $68,748 in Cash for such Liquid Cryptocurrency at January 16, 2024 prices pursuant to the Plan ($42,972.99 per BTC and $2,577.48 per ETH), that Eligible Corporate Account Holder will have two options:

     i.   <u>Elect the Supplemental Cryptocurrency Distribution</u>:  The $68,748 in Cash previously received by the Eligible Corporate Account Holder will be valued using the ratio of (i) the cryptocurrency prices as of January 16, 2024 to (ii) the BTC & ETH Average Values.  This adjustment would reflect that the Eligible Corporate Account Holder has already received the equivalent of 0.66524753 BTC and 7.714682 ETH (the "<u>Cryptocurrency Setoff Amount</u>").  Therefore, the Eligible Corporate Account Holder would be entitled to a Supplemental Cryptocurrency Distribution of the difference between their entitlement under the Plan (in this example, 1 BTC and 10 ETH) and the Cryptocurrency Setoff Amount.  In this example, the Supplemental Cryptocurrency Distribution would be 0.33475247 BTC and 2.285318 ETH (resulting from 1 BTC minus 0.66524753 BTC and 10 ETH minus 7.714682 ETH).  This assumes that such Eligible Corporate Creditor will ultimately be successfully onboarded at Coinbase.  If for any reason the Eligible Corporate Creditor is unable to receive the Liquid Cryptocurrency (e.g., the creditor fails to onboard or some other reason), the Post Effective Date Debtors will sell the Liquid Cryptocurrency allocated to the Eligible Corporate Creditor (less the Cryptocurrency Setoff Amount) at market prices in accordance with the process outlined for creditors receiving a Supplemental Cash Distribution.

     ii.  <u>Elect the Supplemental Cash Distribution (or if the creditor makes no timely election)</u>:  After the Election Deadline, the Post Effective Date Debtors will sell the cryptocurrency equivalent of their Supplemental Cryptocurrency Distribution amounts (described in the example above) in the market as close in time to the Cash distribution as possible to ensure that the creditors receive as close to a current market price as possible (using the process described below).  Illustratively assuming that the market price received for BTC is $60,000 and ETH is $3,000, the Eligible Corporate Account Holder will receive a Supplemental Cash Distribution of approximately $26,941.10 (the proceeds of the sale of 0.33475247 BTC and 2.285318 ETH, which is the 1 BTC and

10 ETH the creditor was entitled to under the Plan, less the Cryptocurrency Setoff Amount).

4. <u>Supplemental Agreement with Coinbase</u>. Coinbase will agree to help implement the Settlement, and as part of doing so, will enter into a supplement to its existing Coinbase Prime Agreement (and the Distribution Addendum thereto) as modified by the Letter Agreement each dated as of October, 20, 2023 with the following key terms (the full supplement will be approved in the Distribution Motion):

(a) <u>Standing Instruction</u>: Pursuant to the Distribution Addendum, Celsius will instruct Coinbase to distribute Liquid Cryptocurrency to those creditors who: (i) make the Coinbase Opt-In, (ii) complete Coinbase's KYC/AML process, (iii) are in an Eligible Country, and (iv) can be matched to Celsius' records (such an instruction the "Standing Instruction"). The Standing Instruction will survive the end of the term of the existing Distribution Addendum. Coinbase will be authorized to take actions necessary to comply with the Standing Instruction (even after the expiration of the Distribution Addendum), but Coinbase's and the Post-Effective Date Debtors' obligations under the Distribution Addendum after the term thereof expires will otherwise be governed in accordance with the terms of the Distribution Addendum.

(b) <u>Continued Onboarding</u>: Notwithstanding the expiration of the term of the Distribution Addendum, Coinbase will continue the onboarding process for creditors who make the Coinbase Opt-In until such creditors have (i) successfully onboarded or (ii) Coinbase has reached a final determination that such Eligible Corporate Account Holders cannot satisfy Coinbase's KYC/AML and onboarding requirements (subject to the timing considerations below).

(c) <u>KYC and Onboarding Process</u>: Creditors will be subject to the same KYC/AML and onboarding requirements, prioritization, process, ordering, and treatment as any similarly-situated ordinary course Coinbase institutional customer, and Coinbase may take all steps consistent with its ordinary course practices to manage the volume of creditors.

(d) <u>KYC Determination</u>: Coinbase will provide a final determination with respect to the KYC/AML eligibility or ineligibility of all creditors who make the Coinbase Opt-In. However, Coinbase is not obligated to successfully onboard any creditor within any particular period of time. Consistent with its legal obligations, Coinbase is under no circumstance required to tell a creditor why it may have failed its onboarding process.

(e) <u>Timing</u>: Creditors who do not initiate the process of opening a Coinbase Prime Account or satisfy document or information requests on the timeline described in section 3(b)(ii) will be dropped from Coinbase and provided with a Supplemental Cash Distribution with no appeal or recourse rights. Electing creditors will acknowledge that no assurances can be made as to the precise timing of the

onboarding process, any of the steps that comprise it, or the final determination of any creditor's eligibility.

(f)   <u>Onboarding Fee</u>: Consistent with the treatment of the initial 100 corporate creditors, Coinbase will waive the Prime Account onboarding fee for new accounts.

(g)   <u>Additional Terms</u>

   i.   Creditors can opt out of Coinbase at any time and instead receive a Supplemental Cash Distribution as set forth herein.

   ii.   Electing creditors who do not already have existing Coinbase institutional accounts will create a Prime Account and must agree to Coinbase's standard Prime Brokerage Agreement governing Prime Accounts without modification.

   iii.   Other terms of the existing Coinbase agreement between the Debtors and Coinbase (the "<u>Coinbase Prime Agreement</u>," and the distribution agreement attached thereto the "<u>Distribution Addendum</u>") will continue to govern except as expressly modified herein or in the supplemental agreement between Coinbase and the Post-Effective Date Debtors, which will be attached to the Distribution Motion and approved by the Court.

5.   <u>Supporting Parties</u>:  The Parties that will support the Distribution Motion will be:

(a)   the post-effective date debtors (collectively, the "<u>Post-Effective Date Debtors</u>," and prior to the Effective Date, the "<u>Debtors</u>");

(b)   Coinbase, Inc. ("<u>Coinbase</u>"); and

(c)   the members of the ad hoc committee of corporate creditors (the "<u>Ad Hoc Committee of Corporate Creditors</u>").

6.   <u>Implementation</u>:  The Plan Administrator shall be empowered to take all actions reasonably necessary to implement the Settlement and make the distributions contemplated hereby.  For the avoidance of doubt, (a) the various release, exculpation and limitation of liability provisions in the Plan and the Plan Administrator Agreement shall apply to the Plan Administrator's good faith actions to implement the Settlement, and (b) neither the Plan Administrator, the Post-Effective Date Debtors, nor Coinbase (nor their respective agents or advisors) shall have any liability on account of fluctuating cryptocurrency market prices in making the transactions underlying the Supplemental Corporate Creditor Distribution.

Appointment of Jarred Herzberg as a "Corporate Creditor Representative," whose reasonable fees and expenses, including counsel fees (if and as reasonably necessary), in connection with this role will be paid from the Disputed Claims Reserve.

The Corporate Creditor Representative shall have meetings (which may be virtual) with representatives of the Plan Administrator on a regular basis to ask questions and receive updates on the status of distributions under the Settlement and key issues (this meeting is expected to be weekly when the Settlement is first being implemented, with meetings being more or less frequent as are appropriate under the circumstances). The Plan Administrator will provide the Corporate Creditor Representative with weekly metrics on distributions (e.g., how many payments were attempted, completed and failed and to the extent possible, providing the key reasons for failures).

The Corporate Creditor Representative shall have standing before the Bankruptcy Court to enforce the terms of this Settlement. In addition, the Plan Administrator will include an update on the status of distributions under this Settlement in monthly reports to the Court, and will share a draft of that section of the monthly report with the Corporate Creditor Representative at least two days before filing it with the Court, and the Plan Administrator will include any statement that the Corporate Creditor Representative requests be included in the monthly report that is filed with the Court.

Eligible Corporate Creditors may route questions regarding implementation of the Settlement to the Corporate Creditor Representative.

In the event of a failed distribution attempt, the Plan Administrator will use best efforts to provide the affected Eligible Corporate Creditor with an update to include the detail regarding the failed distribution attempt within 7 days of the Plan Administrator having notice of the failed attempt.

7. <u>Compensation for the Ad Hoc Committee of Corporate Creditors</u>: The Parties recognize the contribution of the Ad Hoc Committee of Corporate Creditors and its members to the Debtors' estate and to the bankruptcy process in bringing its motions and in participating in the Mediation. As a material part of this settlement and as partial consideration for the releases contemplated herein, the Parties agree that the Post-Effective Date Debtors will compensate the Ad Hoc Committee of Corporate Creditors and its counsel in the aggregate amount of $1.5 million.

8. <u>Mutual Release of Claims</u>: Each Party agrees to release (and the Distribution Motion shall approve such release) the other Parties and their respective related parties (including without limitation the Plan Administrator, other employees, and advisors) from any and all claims, demands, losses, rights, and causes of action of any nature whatsoever that have been, could have been, or can be asserted in the Action or that could have been asserted or could in the future be asserted in any forum, whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law that arise out of or are based upon any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in the Corporate Creditor Motion or otherwise relating to distributions under the Plan (including, without limitation, under the Settlement); <u>provided</u> that the foregoing shall not release any Party's obligations under the Settlement in accordance with the terms thereof.

9. <u>Binding Agreement</u>:  This Term Sheet is intended by the Parties to be a binding agreement that sets forth material terms and obligations of the Parties in connection with a settlement, and the Parties shall use their best efforts to consummate the Settlement contemplated herein, except that nothing in this section 9 alters the terms of section 1 above.  The undersigned counsel represents and warrants that they have authority to enter into this binding Term Sheet on behalf of their respective clients, as set forth below, and their representatives, agents, heirs, and any successors and assigns permitted under this Agreement and applicable law.  This Term Sheet, once entered into, shall be irrevocable.  There are no other persons whose joinder in or consent to this Term Sheet is necessary to make fully effective the Term Sheet's provisions.

10. <u>Stay of Proceedings</u>:  Upon execution of this Term Sheet, the Parties agree to cease all litigation activities against each other (except those related to the negotiation and filing of the Distribution Motion) and shall jointly request that the Court hold the Corporate Creditor Motion in abeyance pending a resolution of the Distribution Motion.  The Corporate Creditor Motion shall be withdrawn with prejudice once the Distribution Motion is approved.

11. <u>No Admission</u>:  The Parties agree that the Settlement shall not be construed as an admission or evidence of any violation of any law or admission as to the truth of any allegation.

12. <u>Choice of Law</u>:  The Settlement shall be governed by New York law.

13. <u>Counterparts:</u>  This Settlement Term Sheet may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the Parties to all of the counterparts had signed the same instrument.  Further, a faxed or electronic copy of an executed counterpart shall have the same force and effect as an original.

*[Signature Pages Follow]*

10

IN WITNESS WHEREOF, the Parties execute this Settlement Term Sheet as of the date the last Party delivers an executed counterpart of this Settlement Term Sheet.

**PLAN ADMINISTRATOR**

(on behalf of itself and the Post-Effective Date Debtors)

By:     */s/ Christopher S. Koenig*
Name:  Christopher S. Koenig
Title:   Counsel to the Plan Administrator

**COINBASE, INC.**

By:    */s/ Thomas S. Kessler*
Name:  Thomas S. Kessler
Title:   Counsel to Coinbase Inc.

**AD HOC COMMITTEE OF CORPORATE CREDITORS**

By:    */s/ Joseph E. Sarachek*

Name:  Joseph E. Sarachek

Title:   Counsel to the Ad Hoc Committee of Corporate Creditors

# Exhibit 2

**Supplemental Coinbase Agreement**

*Execution Copy*

August [•], 2024

Celsius Network LLC, Celsius Network LTD, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius EU UAB
50 Harrison St., Suite 209F
Hoboken, NJ 07030
Attention [•]

Ladies and Gentlemen:

Reference is made to that certain Coinbase Prime Agreement, dated October 20, 2023 (the "Coinbase Prime Agreement"), among Celsius Network LLC, a Delaware limited liability company, Celsius Network Limited, a company incorporated under the laws of the United Kingdom, Celsius Lending LLC, a Delaware limited liability company, Celsius Networks Lending LLC, a Delaware limited liability company, and Celsius EU UAB, a company incorporated under the laws of Lithuania (together, with each of their successors and assigns as permitted hereunder, "Client"), and Coinbase, Inc. ("Coinbase"), on behalf of itself and as agent for Coinbase, Coinbase Custody Trust Company, LLC ("Coinbase Custody"), and, as applicable, Coinbase Credit, Inc. ("Coinbase Credit," and collectively with Coinbase and Coinbase Custody, the "Coinbase Entities"), as supplemented by that certain Letter Agreement between Client and the Coinbase Entities dated October 20, 2023 (the "First Letter Agreement"), and as otherwise modified, amended and supplemented from time to time. In connection with the Coinbase Prime Agreement, the Parties agree to the terms of this Second Letter Agreement (the "Second Letter Agreement") as follows:

**1.     Definitions.**  All capitalized terms used in this Letter Agreement and not otherwise defined herein shall have the meanings assigned to such terms in the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), or, if such terms are not defined in the Coinbase Prime Agreement, the meanings ascribed to them in the Settlement Term Sheet (as defined in Section 4 of this Second Letter Agreement).

**2.     Survival.**  Except as otherwise expressly set forth herein (including, for the avoidance of doubt, in the appendices attached hereto) or as otherwise contemplated by the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), nothing in this Second Letter Agreement or the Settlement Term Sheet shall create any obligations that extend beyond the termination of the Coinbase Prime Agreement or the termination or expiration of the Term of the Distribution Addendum (as amended hereby) (the date of the expiration of the Term of the Distribution Addendum, the "Distribution Addendum Expiration Date").

**3.     Account Support Term.**  The second paragraph of Section 5 of the Distribution Addendum titled "Account Support Term" shall be deleted and is hereby replaced as follows: "***Account Support Term***. *Notwithstanding the above Term of this Distribution Addendum, with respect to each New Crypto Account, Coinbase shall support Distributions for each New Crypto Account until November 9, 2025 (the "Account Support Term Expiration Date," and the period between the expiration of the Term of this Distribution Addendum and the Account Support Term Expiration Date, the "Account Support Term"); provided, however, that nothing herein or in the Distribution Addendum affects the termination rights Coinbase may have with respect to any retail or institutional Coinbase account during the Account Support Term or after the Account Support Term Expiration Date.*"  Distributions to New Crypto Accounts during the Account Support Term shall be "Account Support Distributions." For the avoidance of doubt, an Electing Creditor that completes the Onboarding Process and receives a Supplemental Cryptocurrency Distribution shall thereafter have a New Crypto Account. The frequency of Account Support Distribution attempts per month for retail Claimants shall be once per month during the Account Support Term. The frequency of Account Support Distribution attempts and Supplemental Cryptocurrency Distribution attempts, as applicable, to

*Execution Copy*

institutional Claimants shall be weekly during the first two months of the Account Support Term and once per month thereafter.

4.    **Settlement Term Sheet.**  The rights of Client, the rights of Coinbase, and the obligations of Client and Coinbase to each other as set forth in the Settlement Term Sheet filed at Docket No. [•] in the case *Celsius Network LLC, et. al.* Case No. 22-10964-MG (Bankr. S.D.N.Y.) (the "Settlement Term Sheet") are incorporated by reference.  Notwithstanding the foregoing, the obligations of the Coinbase Entities arising under this Second Letter Agreement are solely to Client, and the Coinbase Entities shall have no obligations to any Claimant absent a separate agreement established between the Coinbase Entities and such Claimant (for the avoidance of doubt, this does not alter the Coinbase Entities' obligations with respect to the process of Onboarding prospective Claimants set forth in the Settlement Term Sheet, but merely clarifies that such obligations are owed to Client and not to any Claimant).

5.    **Supplemental Distribution Fees.**  The Supplemental Distribution Fee Schedule attached hereto as Appendix A contains the economic terms for purposes of Section 1 of the Settlement Term Sheet.  Client shall work in good faith to request that the Court redact or seal the contents of Appendix A.

6.    **Supplemental Distribution Addendum.**  The Supplemental Distribution Addendum attached hereto as Appendix B contains the supplemental agreement for purposes of Section 4 of the Settlement Term Sheet.

7.    **Conflicts.**  In the event of a conflict between the terms of this Second Letter Agreement and the terms of (i) the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), or (ii) the Settlement Term Sheet, the terms of this Second Letter Agreement shall control.

8.    **Incorporation.**  This Second Letter Agreement is subject to the terms of the Coinbase Prime Agreement, including, for the avoidance of doubt, and without limitation, the terms of Sections 19, 20, 22, 23, 25, 26, 27, 30, 31, 33, 35 and the Distribution Addendum.

9.    **Effectiveness.**  This Second Letter Agreement shall be made effective upon the entry of an order by the Court approving the Distribution Motion and this Second Letter Agreement (such order being in form and substance reasonably acceptable to the Parties).

*[Signatures on following page]*

Sincerely,

**COINBASE, INC. For itself and as agent for the Coinbase Entities**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**ACCEPTED:**

**CELSIUS NETWORK LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**CELSIUS NETWORK LTD:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**CELSIUS LENDING LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

*Execution Copy*

**CELSIUS NETWORKS LENDING LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____


**CELSIUS EU UAB:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**Appendix A**

**<u>Supplemental Distribution Fee Schedule</u>**

**Filed Under Seal**

*Execution Copy*

## APPENDIX B

## SUPPLEMENTAL DISTRIBUTION ADDENDUM

**1.      Supplemental Cryptocurrency Distributions.**  Pursuant to the terms of the Settlement Term Sheet, the Coinbase Entities shall facilitate Supplemental Cryptocurrency Distributions to Eligible Corporate Account Holders who (i) timely make the Coinbase Opt-In (such Eligible Corporate Account Holders, "<u>Electing Creditors</u>"), (ii) successfully complete the Onboarding Process, and (iii) for whom Client has issued an Instruction (if made before the Distribution Addendum Expiration Date) or the Standing Instruction.  For the avoidance of doubt, Coinbase also agrees to facilitate Account Support Distributions in accordance with the Distribution Addendum (as amended hereby) to Electing Creditors during the Account Support Term.

**2.      Onboarding Process.**  Pursuant to the Settlement Term Sheet, Coinbase shall review the applications of Electing Creditors, conduct its standard AML/KYC process and checks, review and request documents and materials, execute legal agreements, and take all other steps to open or refresh a Coinbase Prime account or other Coinbase institutional account for Electing Creditors consistent with its ordinary course practices (such steps and processes as may be modified by Coinbase from time to time, "<u>Onboarding</u>" or the "<u>Onboarding Process</u>").

**3.      Onboarding Queue.**  At the same time that Client delivers the Opt-In Emails to Coinbase, Client shall deliver to Coinbase a list of all Electing Creditors in the order Client desires Coinbase to proceed with the Onboarding Process (the "<u>Onboarding Queue</u>").  Pursuant to Section 3(b)(ii) of the Settlement Term Sheet, Coinbase shall use commercially reasonable efforts to send an invitation to Electing Creditors to submit an application to begin the Onboarding Process (such an application, the "<u>Onboarding Application</u>") within 14 days of the date that Coinbase receives the Opt-In Emails from Client (such invitation the "<u>Onboarding Invitation</u>," the date Coinbase sends the Onboarding Invitation, the "<u>Onboarding Invitation Date</u>" and the 30-day period after the Onboarding Invitation Date by which time Electing Creditors are required to complete the Onboarding Application, the "<u>Application Period</u>").  Upon the close of the Application Period, and subject to the terms of this Second Letter Agreement and the Settlement Term Sheet, Coinbase shall administer the Onboarding Process according to the order of Electing Creditors set forth in the Onboarding Queue.  For the avoidance of doubt, Client's provision of the Onboarding Queue to Coinbase shall be the Standing Instruction described by Section 4(a) of the Settlement Term Sheet, and for the further avoidance of doubt, Electing Creditors shall not be eligible to receive a Supplemental Cryptocurrency Distribution unless and until all of the requirements described by the definition of Standing Instruction in Section 4(a) of the Settlement Term Sheet have been satisfied in respect of that Electing Creditor (including, without limitation, a match with Client's records).

**4.      Onboarding Queue Management.**  Coinbase shall not be required to be actively Onboarding more than 15 Electing Creditors simultaneously; *however*, Coinbase shall work in good faith to commence the Onboarding of the first 15 Electing Creditors in the Onboarding Queue promptly following the close of the Application Period.  If, following such commencement, an Electing Creditor (i) completes the Onboarding Process, (ii) opts out of the Supplemental Cryptocurrency Distribution pursuant to Section 4(g)(i) of the Settlement Term Sheet or (iii) fails the Onboarding Process or is otherwise dropped from the Onboarding Process pursuant to the procedures set forth in the Settlement Term Sheet, Coinbase shall cease Onboarding such Electing Creditor and shall commence Onboarding of the next Electing Creditor in the Onboarding Queue, which process shall continue until Coinbase has made the final determination described by Sections 4(b) and 4(d) of the Settlement Term Sheet with respect to each Electing Creditor in the Onboarding Queue (other than those dropped pursuant to subsections (ii) or (iii) hereof).  Coinbase shall submit a report to Client describing the Electing Creditors who completed the Onboarding Process within each calendar month (such report, the "<u>Onboarding Report</u>").

**5.      Communications.**  Notwithstanding Section 4 of the Distribution Addendum, Coinbase and Client shall each have the right to review and approve in its discretion (with such approval not to be unreasonably withheld), any and all (i) filings with the Bankruptcy Court, (ii) other publicly available communications, and (iii) communications that are widely distributed to Electing Creditors (including, for the avoidance of doubt, template communications created for use in response to Electing Creditor inquiries), in each case, regarding Supplemental Cryptocurrency Distributions and/or the Onboarding Process before either Party makes those communications public, or makes generally available to or sends such communications to Electing Creditors.  Client and Coinbase will work in good faith to conduct the drafting, review and approval of the communications contemplated by this Section 5 in a timely manner.  Electing Creditors with questions regarding Supplemental Cryptocurrency Distributions shall be directed to contact Client; provided that Coinbase shall communicate with Electing Creditors, according to its ordinary course business practices and consistent with the treatment of any other Coinbase institutional customer, concerning their questions regarding their status in the Onboarding Process, and each Party shall provide such ordinary course information to each other upon request, provided such request is accompanied by evidence of the relevant Electing Creditors' consent to share such information.

**Exhibit 3**

**Notice of Supplemental Distribution to Eligible Corporate Creditors**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF SUPPLEMENTAL**
**CORPORATE CREDITOR DISTRIBUTION AND ELECTION FORM**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A CORPORATE CREDITOR ELIGIBLE TO RECEIVE A SUPPLEMENTAL DISTRIBUTION AND HAVE THE OPPORTUNITY TO ELECT THE FORM IN WHICH YOU RECEIVE YOUR SUPPLEMENTAL DISTRIBUTION (*I.E.*, CASH OR LIQUID CRYPTOCURRENCY). THE DEADLINE TO SUBMIT THE ELECTION FORM IS [●].[2]  PLEASE READ THIS NOTICE IN ITS ENTIRETY FOR FURTHER INFORMATION.**

**PLEASE TAKE NOTICE THAT** on August 29, 2024, the post-effective date debtors (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors"), the ad hoc committee of corporate creditors (the "Ad Hoc Committee of Corporate Creditors"),

---

[1]  The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  [NTD:  Date to be thirty (30) days after service of the Election Forms.]

and Coinbase, Inc. ("Coinbase," together with the Post-Effective Date Debtors and the Ad Hoc Committee of Corporate Creditors, the "Parties") filed the *Joint Motion Seeing Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. [●]] (the "Motion").[3]  For a more detailed description of the Supplemental Corporate Creditor Distribution, please review the Motion.

PLEASE TAKE FURTHER NOTICE THAT on [●], 2024, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. [●]] (the "Supplemental Corporate Creditor Distribution Order") approving the Motion, including the settlement reached by and among the Parties.

PLEASE TAKE FURTHER NOTICE THAT you are receiving this Notice because you have been identified as an Eligible Corporate Creditor with the opportunity to elect to receive your Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency or Cash by submitting the election form attached hereto as **Exhibit A** (the "Election Form").  Eligible Corporate Creditors that choose the Cash option will also have the option to elect whether to receive their Supplement Cash Distribution by check, wire transfer, or Hyperwallet; *provided* that the Plan Administrator cannot guarantee that any particular option will be available for any particular creditor for a several reasons including, without limitation, that a creditor may be banned by PayPal, or unable to cash a $USD check in their jurisdiction.

PLEASE TAKE FURTHER NOTICE THAT the Post-Effective Date Debtors expect that Eligible Corporate Creditors who elect to receive their Supplemental Corporate Creditor Distribution in Cash will receive their distribution much faster.  Specifically, Eligible Corporate Creditors that elect to receive a Supplemental Cryptocurrency Distribution must undergo an extensive KYC process with Coinbase in order to open a Coinbase institutional account before they can receive their Supplemental Cryptocurrency Distribution.  Moreover, depending on how many Eligible Corporate Creditors elect to receive a Supplemental Cryptocurrency Distribution, it could take substantially longer to open a Coinbase institutional account, which is required for corporate creditors to receive a Liquid Cryptocurrency distribution, than it would to receive a Cash distribution.  Specifically, the Post-Effective Date Debtors believe that Supplemental Cash Distributions will be much faster than the Supplemental Cryptocurrency Distributions because Coinbase will only be processing fifteen Eligible Corporate Creditors at a time through its KYC process.

PLEASE TAKE FURTHER NOTICE THAT for those Eligible Corporate Creditors that elect Cash, the Post-Effective Date Debtors will sell Liquid Cryptocurrency at market prices at a

---

[3]   Capitalized terms used by not defined herein shall have the meaning ascribed to them in the Motion, the Corporate Creditor Supplemental Distribution Order, the Corporate Creditor Settlement Term Sheet, or the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, modified, and supplemented from time to time, the "Plan"), as applicable.

point in time that is as close as reasonably possible to the Supplemental Cash Distribution as further described in the Motion.  The process for selling Liquid Cryptocurrency to make Cash distributions has been approved by the Court pursuant to the Supplemental Corporate Creditor Distribution Order.  For the avoidance of doubt, pursuant to the Plan and accompanying documents, the Plan Administrator will only retain liability for actions that constitute gross negligence, willful misconduct, or fraud.

**PLEASE TAKE FURTHER NOTICE THAT** all Eligible Corporate Creditors that elect to receive their Supplemental Corporate Creditor Distribution in Cash, will also receive all future distributions in Cash.

**PLEASE TAKE FURTHER NOTICE THAT** any Eligible Corporate Creditor that does not submit a completed Election Form by [●] will receive their Supplemental Corporate Creditor Distribution in Cash.

**PLEASE TAKE FURTHER NOTICE** that copies of the pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page left intentionally blank.]*

New York, New York
Dated:  [●]

_____
/s/ Draft

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:        joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:        patrick.nash@kirkland.com
        ross.kwasteniet@kirkland.com
        chris.koenig@kirkland.com
        dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

**Exhibit A**

**Election Form**



# CORPORATE CREDITOR ELECTION FORM

## ELECTION FOR ELIGIBLE CORPORATE CREDITORS TO RECEIVE A SUPPLEMENTAL CORPORATE

## CREDITOR DISTRIBUTION IN CASH OR LIQUID CRYPTOCURRENCY

**This election form is pursuant to the Joint Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief. More information can be found here: https://cases.stretto.com/public/x191/11749/PLEADINGS/117490830248000000015.pdf**

**Please carefully read this election form and the instructions below before submitting your completed election form to select whether to receive your supplemental corporate creditor distribution in cash or liquid cryptocurrency.**

**If you have any questions, please open a support inquiry with the Distribution Support Team: Go to https://celsiusdistribution.stretto.com/support/tickets/new and select "I need help with my Supplemental Corporate Creditor Distribution."**

**THE DEADLINE TO SUBMIT THIS ELECTION FORM IS WEDNESDAY OCTOBER 16TH, 2024 at 10:00 PM UTC. IF YOU DO NOT TIMELY RETURN THIS ELECTION FORM, YOUR SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION WILL BE MADE IN *CASH.***

**CREDITORS THAT ELECT FOR LIQUID CRYPTOCURRENCY WILL BE PUT IN A QUEUE FOR THE ONBOARDING PROCESS WITH COINBASE AS SET FORTH IN THE MOTION LINKED ABOVE. THAT QUEUE WILL BE IN THE ORDER CREDITORS FULLY COMPLETE AND SUBMIT THEIR INITIAL APPLICATION TO BEGIN THE ONBOARDING PROCESS WITH COINBASE, INCLUDING SUBMITTING ALL REQUIRED DOCUMENTATION.**

<table>
<tr><td colspan="3"><b>Creditor Information</b><br>The following information must match the Creditor's Celsius Account Information for identity verification purposes. If the information that you provide does not match our records, we will request additional information for verification and you may experience delays.</td></tr>
<tr><td><b>Creditor Name</b></td><td><i>Name used for Account</i></td><td></td></tr>
<tr><td><b>Email Address</b></td><td><i>Email used for Account</i></td><td></td></tr>
<tr><td><b>Country</b></td><td><i>Jurisdiction will affect Distribution Partner options</i></td><td></td></tr>
<tr><td><b>Authorized Contact Name</b></td><td><i>Beneficial Owner, if applicable</i></td><td></td></tr>
</table>

The undersigned Account Holder elects as follows:

<u>Item 2.</u>  **Eligible Corporate Creditor Supplemental Distribution Electon.**

I**f you do not make an election below, your Supplemental Corporate Creditor Distribution will be made in Cash.**

☐ **I elect to receive the Supplemental Corporate Creditor Distribution in <u>Cash.</u> (Continue with Item 2)**

☐ **I elect to receive the Supplemental Corporate Creditor Distribution in <u>Liquid Cryptocurrency.</u> (Continue with Item 3)**

<u>Item 2.</u>  **Cash Election for Eligible Corporate Creditors.**

Eligible Corporate Creditors who have elected to receive their Supplemental Corporate Creditor Distribution in Cash in Item 1 should make the additional election below.  Eligible Corporate Creditors who wish to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency should not make an election in Item 2. For the avoidance of doubt, any Eligible Creditor who makes an election in Item 2 will be deemed to have elected to receive a Cash Distribution regardless of their election in Item 1.

☐ **I elect to receive my Supplemental Cash Distribution <u>by Hyperwallet.</u>** Hyperwallet is only available in specific jurisdictions, more information can be found here: https://celsiusdistribution.stretto.com/support/solutions/articles/153000190893-receiving-your-usd-via-hyperwallet.)

    ☐ **I agree to provide KYC information for at least one beneficial owner of the applicable institutional creditor to Celsius to effectuate the distribution.**

☐ **I elect to receive my Supplemental Cash Distribution b<u>y receiving a check in the mail.</u>**

    ☐ **I have already successfully received a check in the mail from the Plan Administrator and can receive my Supplemental Cash Distribution using the same instructions previously provided.**

☐ **The Mailing Address to which the check should be mailed is:** _____ _____. **Note that this mailing address must match what was submitted during the Celsius account setup. If the address that you provide here is different from the address on file, you may need to provide proof of address documentation.**

☐ **I elect to receive my Supplemental Cash Distribution by receiving a bank wire transfer.**

    ☐ **I have already successfully received a wire transfer from the Plan Administrator and can receive my Supplemental Cash Distribution using the wire transfer information I previously submitted.**

    ☐ **I will provide the wire transfer instructions needed by the Plan Administrator to effectuate the wire transfer. I will complete the Wire Transfer Form provided in Item 4.** Note that this form is electronically signed and submitted, the information provided will be reviewed and verified before the wire transfer can be attempted. If any information is incomplete or does not meet the bank data requirements, your wire transfer will not be attempted.

**Item 3.** **Liquid Cryptocurrency Election for Eligible Corporate Creditors.**

Eligible Corporate Creditors who have elected to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency in Item 1 should make the additional election below, if applicable. Eligible Corporate Creditors who elected to receive their Supplemental Corporate Creditor Distribution in Cash should not make an election in Item 3.

Please note that Liquid Cryptocurrency claim distributions are serviceable by Coinbase only.

If you have an existing Coinbase institutional account in the same name as your Celsius corporate account, please check the below box and insert the email associated with your Coinbase institutional account:

☐ **I have an active Coinbase institutional account in the same name as my Celsius corporate account.**

    ☐ **The email associated with the Coinbase institutional account is:** _____ _____.

☐ **I do not have an active Coinbase institutional account in the same name as my Celsius corporate account.** I will open an account in accordance with the Coinbase onboarding process.

By checking the box below, you release Coinbase, the Plan Administrator, the Post-Effective Date Debtors (and their respective agents and advisors) for (i) any change in market prices and (ii) any claim related to your ability to onboard with or ultimately receive any distribution through Coinbase and/or the timing of such onboarding or distribution except for actions that constitute gross negligence, willful misconduct, or fraud. By checking the box below, you also authorize Coinbase and the Post-Effective Date Debtors (and their respective agents and advisors) to share communications, data, and other information with each other to further facilitate the Supplemental Cryptocurrency Distribution.

***YOU MAY NOT ELECT THE SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION IN LIQUID CRYPTOCURRENCY WITHOUT CHECKING THE BOX BELOW. IF YOU DO NOT CHECK THE BOX BELOW, YOU WILL RECEIVE A SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION IN CASH INSTEAD.***

3

☐ **I have read, understand, and agree to the terms of my liquid cryptocurrency election outlined in the paragraphs above, including the release set forth above.**

<u>**Acknowledgement.**</u>

**PLEASE COMPLETE AND SUBMIT THIS ELECTION FORM IN ACCORDANCE WITH THE INSTRUCTIONS CONTAINED HEREIN BY WEDNESDAY, OCTOBER 16, 2024 AT 10:00 PM UTC. IF YOU DO NOT TIMELY RETURN THIS ELECTION FORM, YOUR SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION WILL BE MADE IN *CASH*.**

<u>**If you have any questions regarding this election form or these instructions,**</u> **please open a support inquiry with the Distribution Support Team: https://celsiusdistribution.stretto.com/support/tickets/new and select "I need help with my Supplemental Corporate Creditor Distribution."**

Release of Claims: By signing this Form, you agree that the supplemental distribution that you are agreeing to in this Form is in full and final satisfaction of the Plan's initial distribution of liquid cryptocurrency to you, and you also agree to release Celsius Network LLC and its related parties (including without limitation the Plan Administrator, parent entities, subsidiaries, affiliates, employees, and advisors) from any and all claims, demands, losses, rights, and causes of action of any nature whatsoever that have been, could have been, or can be or that could have been asserted or could in the future be asserted in any forum, whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law that arise out of this Form or the transactions authorized thereby, including, without limitation, to the extent applicable, the conversion of your distributions from cryptocurrency to USD (including, without limitation, the date and time of such conversion and distribution, as well as any change in market prices between the date and time this Form is signed and sent back to Celsius and when the USD distribution pursuant thereto is made) and, to the extent applicable, the distribution of Liquid Cryptocurrency contemplated hereby; provided that the foregoing shall not release Celsius' obligations under the Form or the Settlement, or any actions that constitute gross negligence, willful misconduct, or fraud.

**This Election Form is implementing the terms that are set forth in greater detail in the Joint Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief. More information can be found here: https://cases.stretto.com/public/x191/11749/PLEADINGS/117490830248000000000015.pdf**

**This Election Form does not describe all details including the process for distributions and/or converting creditor assets held in cryptocurrency into fiat currency, and other important terms, all of which are set forth in greater detail pursuant to the Motion. Please read the Motion to make sure you understand the terms and conditions relating to this supplemental distribution.**

☐ **I have read and understand the terms of this Election Form as set forth in the Motion.**

**SIGNATURE OF AUTHORIZED CONTACT**

| Signature: | | Date Signed: | |
|---|---|---|---|

**Item 4.**

# WIRE TRANSFER FORM

### Authorization Form for Celsius Creditor Wire Transfers

This Wire Transfer Form is to be used for US Dollar (USD) claim distributions associated with Celsius. The information provided in this Wire Transfer Form **is to be accurately completed and signed by the Creditor**.

**We strongly suggest <u>contacting your bank</u> to ensure the information you provide is accurate and sufficient for receiving a USD wire transfer from the United States. If a reference or additional banking information is needed, please appropriately add to the "Additional 1-4" Bank Data fields.**

After this form is electronically signed and submitted, the information provided will be reviewed and verified before the wire transfer can be attempted. If any information is incomplete or does not meet the bank data requirements, your wire transfer will not be attempted.

| CREDITOR PERSONAL INFORMATION | | | |
|---|---|---|---|
| Full Name: | | | |
| Email: | | Phone: | |

The Creditor is responsible for providing the **Required Information** in the space provided.

**\*\*Must match the Creditor's Celsius Account Information** for purposes of identity verification. (Ex. Beneficiary Name: "John Smith" will not be acceptable in the event the Creditor's Celsius Account information is Creditor Name: "ABC Industries LLC.")

| BENEFICIARY BANK INFORMATION | | | |
|---|---|---|---|
| **Bank Data** | **Bank Data Requirements** | **Sample Information** | **Creditor Information** |
| **Account # Type** | "IBAN" or "Other" only | Other | |
| **Account #** | Alpha (A-Z), Numeric (0-9), 35 characters max | 012345678910 | |
| **Routing Type** | "ABA" or " SWIFT" only | ABA | |
| **ABA Routing #** | Numeric (0-9), 9 characters max | 123456789 | |
| or **SWIFT Routing #** | Alpha (A-Z), Numeric (0-9), 11 characters max | | |

6

| BENEFICIARY BANK INFORMATION | | | |
|---|---|---|---|
| Bank Data | Bank Data Requirements | Sample Information | Creditor Information |
| Bank Name | *Alpha (A-Z), Numeric (0-9), 35 characters max* | Bank of Bank | |
| Bank Address 1 | *Alpha (A-Z), Numeric (0-9), 35 characters max* | 1010 Main Street | |
| Bank Address 2 | *Alpha (A-Z), Numeric (0-9), 35 characters max* | Suite 100 | |
| Bank Address City | *Alpha (A-Z), Numeric (0-9), 35 characters max* | New York | |
| Bank Address State | *Alpha (A-Z), Numeric (0-9), 35 characters max* | NY | |
| Bank Address Zip | *Alpha (A-Z), Numeric (0-9), 35 characters max* | 10044 | |
| Bank Address Country | *Alpha-2 country codes only* | US | |
| **Beneficiary Name | *35 characters max* | ABC Industries LLC | |
| **Beneficiary Address 1 | *Alpha (A-Z), Numeric (0-9), 35 characters max* | 212 Adams Street | |
| **Beneficiary Address 2 | *Alpha (A-Z), Numeric (0-9), 35 characters max* | | |
| **Beneficiary Address City | *Alpha (A-Z), Numeric (0-9), 35 characters max* | New York | |
| **Beneficiary Address State | *Alpha (A-Z), Numeric (0-9), 35 characters max* | NY | |
| **Beneficiary Address Zip | *Alpha (A-Z), Numeric (0-9), 35 characters max* | 10044 | |

7

| BENEFICIARY BANK INFORMATION | | | |
|---|---|---|---|
| **Bank Data** | **Bank Data Requirements** | **Sample Information** | **Creditor Information** |
| **\*\*Beneficiary Address Country** | *Alpha-2 country codes only* | US | |
| Additional 1 (if needed) | *Alpha (A-Z), Numeric (0-9), 35 characters max* | Transit #: 12345 | |
| Additional 2 (if needed) | *Alpha (A-Z), Numeric (0-9), 35 characters max* | FFC: XYZ Trust (Acct 01234567890) | |
| Additional 3 (if needed) | *Alpha (A-Z), Numeric (0-9), 35 characters max* | | |
| Additional 4 (if needed) | *Alpha (A-Z), Numeric (0-9), 35 characters max* | | |
| (If Needed) INTERMEDIARY BANK INFORMATION | | | |
| **Bank Data** | **Bank Data Requirements** | **Sample Information** | **Creditor Banking Information** |
| Intermediary Bank Routing Type | *"ABA" or " SWIFT" only* | ABA | |
| Intermediary ABA Routing # | *Numeric (0-9), 9 characters max* | 123456789 | |
| or Intermediary Bank SWIFT Routing # | *Alpha (A-Z), Numeric (0-9), 11 characters max* | | |
| Intermediary Bank Country | *Alpha-2 country codes only* | | |

## ACKNOWLEDGEMENT

By submitting this form and acknowledging that "I understand and agree that this is a legal representation of my signature", the Creditor represents, warrants and acknowledges that (a) the information the Creditor has provided in this form is true, accurate and complete and may be relied upon by Celsius Network LLC and anyone acting on its behalf for any purpose, including the applicable distribution of US Dollars. The Creditor acknowledges that Celsius Network LLC and anyone acting on its behalf are relying on such information in connection with the expected claim distribution of US Dollars. If at any time any of the information provided by the Creditor in this form shall cease to be true, accurate and complete, the Creditor

will immediately notify Celsius Network LLC in writing, (b) the Creditor has full control and access to the bank account identified by the Creditor in this form, and (c) failure to provide true, accurate and complete information in this form may result in permanent loss of Creditor's claim distribution through no fault of Celsius Network LLC and/or anyone acting on its behalf.

**SIGNATURE OF AUTHORIZED CONTACT**

| Signature: | Date Signed: | |
|---|---|---|