CASE NO.: 1:24-cv-09278-JSR

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Celsius Network, LLC

v.

United States Trustee

---

Appeal from the U.S. Bankruptcy Court for the Southern District of New York,
Hon. Martin Glenn presiding, Case No. 22-10964-mg

---

# APPELLANT'S OPENING BRIEF

---

Joseph E. Sarachek, Esq.
Zachary E. Mazur, Esq.
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
joe@saracheklawfirm.com
zachary@saracheklawfirm.com

i

# TABLE OF CONTENTS

I.    JURISDICTIONAL STATEMENT ................................................................1

II.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................3

    A.    Did the Bankruptcy Court Abuse its Discretion by Treating Essential Terms of the Settlement Separately Instead of Approving or Denying the Settlement as a Whole? ...................................................................................3

    B.    Did the Bankruptcy Court Abuse its Discretion by Applying the Wrong Legal Standards to its Determination on Sarachek Law Firm's Professional Fees and Disregarding the Confirmed Chapter 11 Plan? ...............................4

    C.    As a Threshold Issue: Was the Settlement Order Timely Appealed? ...4

    D.    As a Threshold Issue: Does *Pro Se* Creditor Sean Xue Have Standing on Appeal? ...............................................................................................................5

III.  STATEMENT OF THE CASE ......................................................................6

IV.   SUMMARY OF THE ARGUMENT ...........................................................11

V.    ARGUMENT ...............................................................................................12

    A.    Standard of Review .............................................................................12

    B.    The Appellant's Contentions ..............................................................13

        1.    The Bankruptcy Court Abused its Discretion by Modifying a Material Provision of the Corporate Creditor Settlement ......................13

        2.    The Bankruptcy Court Abused its Discretion by Applying Incorrect Legal Standards to the Fee Application .................................................17

    C.    In Any of These Cases, the Settlement Fee Payment Consisted of Reasonable Professional Fees and Should Be Paid .......................................24

    D.    The Settlement Order is Properly and Timely Appealed Here ..........31

VI.   CONCLUSION .............................................................................................37

CERTIFICATE OF COMPLIANCE WITH RULE 8015(h) .................................39

CERTIFICATE OF SERVICE ...............................................................................40

# TABLE OF AUTHORITIES

### Cases

*Allen v. Grist Mill Cap. LLC*, 88 F.4th 383 (2d Cir. 2023) ......................................2

*Bey v. City of New York*, 999 F.3d 15 (2d Cir. 2021) ............................................2, 3

*Bosman v. Glod*, 2015 WL 9244275 (Bankr. N.D.N.Y. 2015) ...............................39

*Budinich v. Becton Dickinson and Co.*, 486 U.S. 196 (1988) ................... 40, 41, 42

*Deangelis v. Corzine*, 151 F.Supp.3d 356 (S.D.N.Y. 2015)...................................17

*Dubin v. E.F. Hutton Group, Inc.*, 845 F.Supp. 1004 (S.D.N.Y. 1994).................33

*Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th 1317 (11th Cir. 2023) ......... 40, 42

*Fiala v. Metropolitan Life Ins. Co., Inc.*, 899 N.Y.S.2d 599
   (Sup. Ct. N.Y. Cty. March 3, 2010).....................................................................18

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)............ 30, 32

*Gordon v. Verizon Communications, Inc.*, 148 AD3d 146 (1st Dept. 2017) ..........18

*Honeywell Int'l, Inc. v. Purolator Prods. Co.*, 468 F.3d 162 (2d Cir. 2006) ..........40

*In re Air Crash Disaster at John F. Kennedy Intern. Airport…*, 687 F.2d 626
   (2d Cir. 1982)........................................................................................................17

*In re Arrowhead Estates Development Co.*, 42 F.3d 1306 (9th Cir. 1994)............38

*In re Blasingame*, 525 B.R. 675 (6th Cir. B.A.P. 2015)................................... 38, 39

*In re Braude Jewelry Corp.*, 333 B.R. 156  (Bankr. N.D. Ill. 2005).......................22

*In re Cahill*, 428 F.3d 536 (5th Cir. 2005)........................................................ 13, 14

*In re Celotex Corp.*, 227 F.3d 1336 (11th Cir. 2012) .............................................14

*In re Central Illinois Energy, L.L.C.*, 406 B.R. 371 (Bankr. C.D. Ill. 2008) ..........16

*In re Charis Hosp., L.L.C.*, 360 B.R. 190 (Bankr. M.D.La. 2007).................. 25, 29

*In re Chewning & Frey Security, Inc.*, 328 B.R. 899 (N.D. Ga. 2005)...................29

*In re Dahlgren Int'l, Inc.*, 147 B.R. 393 (N.D. Tex. 1992) .............................. 21, 29

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992).......4

*In re Hood Farms, Inc.*, 639 B.R. 788 (Bankr. M.D.Ga. 2022) .............................37

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) ....................... 13, 14, 15

*In re Litas Intern., Inc.*, 316 F.3d 113 (2d Cir. 2003).............................................39

*In re McDermott*, 2008 WL 877964 (Bankr. D.N.J. Mar. 27, 2008) ......................16

*In re MF Global, Inc.*, 466 B.R. 244 (Bankr. S.D.N.Y. 2012)................................15

*In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006)..............................................16

*In re Pilgrim Medical Center, Inc.*, 574 B.R. 523 (Bankr. D.N.J. 2017)......... 24, 34

*In re Provan*, 74 B.R. 717 (9th Cir. B.A.P. 1987)..................................................14

*In re Roper and Twardowsky, LLC*, 559 B.R. 375 (Bankr. D.N.J. 2016) ..............15

*In re September 11 Property Damage Litigation*, 650 F.3d 145 (2d Cir. 2011) .....13

*In re Trism, Inc.*, 282 B.R. 662 (8th Cir. BAP 2002) ................................................16

*In re Troutman Enterprises*, 253 B.R. 8 (6th Cir. BAP 2000) ................................22

*In re Wright*, 566 B.R. 457 (6th Cir. BAP (Ohio) 2017)............................................3

*Kearney v. Unsecured Creditors Committee*, 987 F.3d 1284 (10th Cir. 2021).......13

*Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397 (2d Cir. 2000) .......................42

*Mardick v. Stover*, 329 F.2d 561 (9th Cir. 1968).....................................................38

*Marine Midland Bank v. Slyman*, 995 F.2d 362 (2d Cir. 1993) ..............................42

*Matter of Ladycliff Coll.*, 35 B.R. 111 (Bankr. S.D.N.Y. 1983) ............................24

*Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102 (2d Cir. 2014)..................................2

*Midland Asphalt Corp. v. U.S.*, 489 U.S. 794 (2015)..............................................38

*Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023) ........................... 17, 33

*Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994) ....................................................4

*Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39 (2d Cir. 2013) ............................40

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207 (2d Cir. 2005) .....2

*Roberts et al. v. Ehrlich et al.*, Case No. 1:22-cv-09590-PKC

   (S.D.N.Y. October 8, 2024) ................................................................................32

*Saska v. Metropolitan Museum of Art*, 54 N.Y.S.3d 566

   (Sup. Ct. N.Y. Cty. June 15, 2017)....................................................................17

*St. Louis, I.M. & S. Ry. Co. v. Southern Express Co.*, 108 U.S. 24 (1883) ..............2

*Yost v. Stout*, 607 F.3d 1239 (10th Cir. 2010) ........................................................42

**Rules**

Rule 4 Fed. App. P. ...................................................................................................37

Rule 4(a)(1) Fed. App. P. ..........................................................................................38

Rule 4(a)(4)(A)(iv) Fed. App. P. ...............................................................................41

Rule 58 Fed. R. Civ. P. ...................................................................................... passim

Rule 58(a) Fed. Civ. P. ..............................................................................................38

Rule 58(c)(2)(A) Fed. Civ. P. ....................................................................................39

Rule 58(c)(2)(B) Fed. Civ. P. ....................................................................................39

Rule 59 Fed. Civ. P. ............................................................................................ 41, 42

Rule 59(e) Fed. Civ. P. ..............................................................................................42

Rule 7001 Fed. Bankr. P. ..................................................................................... 36, 37

Rule 7001(7) Fed. Bankr. P. ......................................................................................37

Rule 7058 Fed. Bankr. P. ........................................................................ 36, 37, 41

Rule 8002 Fed. Bankr. P. ........................................................................37

Rule 8002(a)(1) Fed. Bankr. P. ...............................................................38

Rule 8002(a)(5) Fed. Bankr. P. ...............................................................36

Rule 9014 Fed. Bankr. P. ................................................................... 36, 37

Rule 9014(c)(1) Fed. Bankr. P. ...............................................................36

Rule 9019(a) Fed. Bankr. P. ............................................................ 1, 15, 16

Rule 9019(b) Fed. Bankr. P. ....................................................................25

Rule 9023 Fed. Bankr. P. .........................................................................42

**Statutes**

11 U.S.C. § 1141(b) ........................................................... 21, 27, 28, 29

11 U.S.C. § 1141(c) .................................................................. 21, 27, 29

11 U.S.C. § 327(a) ........................................................................... 24, 25

11 U.S.C. § 330 ................................................................................ 29, 35

11 U.S.C. § 330(a)(3) ...................................................................... 18, 31

11 U.S.C. § 503(b)(3)(D) ................................................................. 20, 23

11 U.S.C. § 503(b)(4) ...................................................................... 20, 23

28 U.S.C. § 1334 ...................................................................................1

28 U.S.C. § 1334(b) .............................................................................29

28 U.S.C. § 157(a) .................................................................................1

28 U.S.C. § 157(b) .................................................................................1

28 U.S.C. § 158(a)(1) .............................................................................3

28 U.S.C. § 158(c)(1)(A) ........................................................................3

## I.    JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Southern District of New York had jurisdiction to enter a final order pursuant to 28 U.S.C. § 157(a) and (b), 28 U.S.C. § 1334, and Federal Rule of Bankruptcy Procedure 9019(a).  This appeal is taken from the *Memorandum Opinion Granting in Part and Denying in Part Joint Motion of Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and Coinbase Inc. and (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (ii) Approving Procedures for Supplemental Corporate Creditor Distributions, (iii) Denying Request for $1.5 Million Payment to Ad Hoc Committee of Corporate Creditors, and (iv) Approving Related Relief* [Docket No. 7726] [0001-0027] (the "Settlement Opinion") and *Order (i) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (ii) Approving Procedures for Supplemental Corporate Creditor Distributions, and (iii) Granting Related Relief* [Docket No. 7747] [0028-0070] (the "Settlement Order"), as made final by the *Memorandum Opinion and Order Approving in Part and Denying in Part the Final Fee Application of the Sarachek Law Firm* [Docket No. 7810] [0071-0080] (the "Fee Order," and together with the Settlement Opinion and

Settlement Order[1], the "Opinions and Orders" forming the final decision herein appealed).

"Finality is determined on the basis of pragmatic, not needlessly rigid *pro forma*, analysis." *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 (2d Cir. 2023) (quoting *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 109 (2d Cir. 2014), other citations omitted). "Generally, a final decision is one 'that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Bey v. City of New York*, 999 F.3d 157, 163 (2d Cir. 2021) (quoting *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005)); *St. Louis, I.M. & S. Ry. Co. v. Southern Express Co.*, 108 U.S. 24, 28-29 (1883). Also generally, "an order approving a proposed settlement is a final order." *In re Wright*, 566 B.R. 457, 459 (6th Cir. BAP (Ohio) 2017) (citations omitted). The Settlement Order approved the contemplated settlement agreement, but did so only subject to resolving a continuing issue as to one of that agreement's terms. The Settlement Order did not "[leave] nothing for the court to do but execute the judgment." *Bey v. City of New York*, 999 F.3d at 163 *supra*. The Settlement Order invited submission of a fee application to resolve the issue of the settlement's fee payment provision, which was ruled upon in the Fee Order. After the Fee Order was issued, with the Bankruptcy Court approving

---

[1] The Settlement Opinion was initially followed by an order at Docket No. 7728, but this order omitted referenced exhibits. The Settlement Order remedied the omission of exhibits; it is otherwise substantively identical to Docket No. 7728 and supersedes it.

only a small fraction of the Appellant's negotiated fees, Appellant filed a timely notice of appeal on November 26, 2024.  Docket No. 7867 [0188-0199].

Jurisdiction of this Court over appeals from the Bankruptcy Court is appropriate pursuant to 28 U.S.C. § 158 (a)(1) and 28 U.S.C. § 158(c)(1)(A).

## II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

### A.    Did the Bankruptcy Court Abuse its Discretion by Treating Essential Terms of the Settlement Separately Instead of Approving or Denying the Settlement as a Whole?

In the *Joint Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. 7661] [0081-0150] (the "Settlement Approval Motion"), the Post-Effective Date Debtors, jointly with the Ad Hoc Committee of Corporate Creditors ("AHCCC," the "Appellants"), sought approval of a settlement agreement which included a specified $1.5 million payment to the AHCCC (the "Settlement Fee Payment") as a "material term."  Did the Bankruptcy Court abuse its discretion by approving the settlement in part and denying it in part, specifically the Settlement Fee Payment, thereby changing an essential term of the agreement in violation of Bankruptcy Rule 9019(a)?  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

**B.    Did the Bankruptcy Court Abuse its Discretion by Applying the Wrong Legal Standards to its Determination on Sarachek Law Firm's Professional Fees and Disregarding the Confirmed Chapter 11 Plan?**

After the Bankruptcy Court denied the Settlement Fee Payment portion of the Settlement Motion, Sarachek Law Firm ("SLF"), as counsel for the AHCCC, sought to recover the settlement's $1.5 million payment in the form of a fee application, as ordered by the Bankruptcy Court.[2]  Did the Bankruptcy Court apply incorrect standards of law in reviewing and deciding the Fee Application by applying, post-confirmation and post-effective date of a chapter 11 plan, standards for the administrative expenses of a bankruptcy estate?  Did the Bankruptcy Court make an error of law by demanding and ruling on the Fee Application despite the plain language of the confirmed chapter 11 plan granting the Post-Effective Date Debtors authority make payments to professionals without further bankruptcy procedure or approval?

**C.    As a Threshold Issue: Was the Settlement Order Timely Appealed?**

The U.S. Trustee's office has indicated that this appeal is untimely as to the Settlement Order, however, they are mistaken because the Settlement Order was merely an interlocutory order.  The final order of the Bankruptcy Court with respect

---

[2] In fact, in that Court-ordered Fee Application, SLF sought its full contingency fee, as agreed with the AHCCC, consisting of 5% of the additional distributions achieved for the eligible corporate creditors.  Because the additional distributions are partially contemplated in cryptocurrency, the value of that fee varies over time.  At the time of the Fee Application, SLF determined the fee to be between $1.6 and $1.8 million (depending on the timing of the additional distributions).  With the subsequent increase of the price of Bitcoin, 5% of the additional distributions as contemplated by the Settlement Agreement would be a much higher number in U.S. Dollars.

to the Settlement Approval Motion was the Fee Order. Because the Bankruptcy Court, through its interlocutory Settlement Order, still set forth a 14-day path for the Appellant to seek and approve payment of the Settlement Fee Payment (through the Fee Application), it would have been improper for Appellant to appeal that order without giving the Bankruptcy Court an opportunity to approve or deny the Fee Application. Indeed, had the Bankruptcy Court approved the Fee Application in any amount equal or greater to the $1.5 million Settlement Fee Payment, the Appellant would have suffered no injury, and any appeal of the first order would have been mooted.

**D.    As a Threshold Issue: Does *Pro Se* Creditor Sean Xue Have Standing on Appeal?**

Sean Xue held unsecured creditor claim no. 3.1.509276. Docket 974-2 p. 2195, Schedule F-1 *Non-Priority Unsecured Retail Customer Claims* p. 12157 [0498]. Mr. Xue transferred this claim per Rule 3001(e) Fed. Bankr. P. on July 11, 2023 long before the Settlement Approval Motion to Wei Qiang via Xclaim. Docket No. 3026 (incompletely redacted) [0499-0501]; *see also* Docket No. 3248-1 (unredacted) [0502-0504]. Upon information and belief formed after a reasonable inquiry, Mr. Xue does not hold any other claims under his name. Does Mr. Xue hold any claim or interest in the Post-Effective Date Debtors or otherwise have standing to participate in this appeal? Appellant does not know. Mr. Xue should state the basis of his purported standing on the appeal docket.

### III.    STATEMENT OF THE CASE

In March 2024, SLF, a law firm that specializes in representing investors and creditors in bankruptcy cases on a contingency fee basis, met with a group of corporate creditors who held claims in the cryptocurrency bankruptcy case of Celsius Network, Inc.  These creditors were being discriminated against and being treated differently than other similarly situated creditors in their class.  That is a violation of the United States Bankruptcy Code.  SLF identified this breach of Celsius' chapter 11 plan (as attached in Docket No. 4289 [0200-0295], the "Plan").  The specific nature of the breach was that the Post-Effective Date Debtors ("PEDD") were only permitting the 100 largest corporate creditors (i.e. non-individual entities who were owed distributions under the Plan) to receive their distributions in cryptocurrency, despite the Plan specifying that every corporate creditor had the option to do so (and elected such treatment by voting in support of the Plan).  Combined with delays in cash distributions and the rise of cryptocurrency prices during the distribution process, non-top-100 corporate creditors were being prejudiced by the delayed cash distributions.  Cash distributions were intended to represent the sale of cryptocurrency, and prejudiced creditors could purchase far less cryptocurrency with their delayed cash distributions than those creditors were entitled to receive under the Plan.  These distributions were therefore worth less than what was promised under the Plan, and represented a smaller *pro-rata* share than

6

top-100 corporate creditors (members of the same class of creditors under the Plan) and individual creditors received.  One group of corporate creditors that was impacted by this treatment were entities created by Bernard and Sheri Faller[3], who invested some of their retirement monies in cryptocurrency held by Celsius Network. On behalf of the Fallers' corporate entities (the "Faller Creditors"), in June of 2024 SLF filed the *Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization to the Faller Creditors and (II) Granting Related Relief*, Docket No. 4911 [0296-0304] (the "Faller Creditor Motion," also referred to as the "Corporate Creditor Motion" by the PEDD).  The Faller Creditor Motion was swiftly followed by 32 joinder motions from other similarly situated corporate creditors.  Docket No. 4916 *et seq*. [0305-0383].

The Bankruptcy Court, alerted to the breach of the Chapter 11 plan by the filing of the Faller Creditor Motion and by the Fallers' subsequent request for discovery, opined at the June 28, 2024 Omnibus Hearing that "hundreds of creditors" were complaining with good cause.  The Faller Creditor Motion was heard on July 29, 2024 and SLF requested that the Court order the parties to mediate the damages. Transcript regarding Hearing Held on 7/29/2024, Docket No. 7569, at 52:5-9 [0421]. The Bankruptcy Court directed the PEDD, the U.S. Trustee, and Coinbase (the PEDD's cryptocurrency distribution partner) to "fix" the problem.  *Id.*  The Faller

---

[3] BFaller RD LLC, BFaller ROTH RD LLC, SFaller TRD RD LLC, and SFaller RD LLC

Creditor Motion was stayed pending mediation, at which time SLF and the Faller Creditors organized the AHCCC for the purpose of fully and finally resolving all corporate creditor issues. *See* Docket Nos. 7572 [0435-0438] and 7586 [0439-0448] (entered Docket No. 7588 [0449-0459]).

The PEDD and AHCCC participated in a two-day mediation over August 14 and 15, 2024. A settlement (the "Corporate Creditor Settlement," with a "Settlement Term Sheet" at [0035-0052]) was reached which would allow non-top-100 corporate creditors to receive cryptocurrency distributions and/or receive a supplemental cash distribution to compensate for the value shortfall. Settlement Approval Motion ¶ 3 [0087-0088]. This settlement and the related supplemental distributions were available for all corporate creditors who had been denied the opportunity to take a distribution of cryptocurrency (the "Eligible Corporate Creditors").

The U.S. Trustee and *pro se* creditor Sean Xue opposed the Settlement Approval Motion. Docket Nos. 7665-7667 [0460-0490].

The Settlement Opinion and Settlement Order granted the Settlement Approval Motion in part and denied it in part. The only portion that was denied was the $1.5 million Settlement Fee Payment, based on ambiguity as to whether this was a "cherry on top" payment for the representative creditors or merely a payment of professional fees. Settlement Opinion at 24-26 [0024-0026] (discussing the issue and approving only the portion which is professional fees); Settlement Order ¶ 2

8

[0029] (not approving the Settlement Fee Payment as is).  The Settlement Order

includes the following provision regarding the $1.5 million payment to the UCCC:

> Counsel to the Ad Hoc Committee of Corporate Creditors
> may file, by October 17, 2024, an application for payment
> of fees that must include detailed and itemized time
> records reflecting the work performed from the time of its
> engagement through the execution of the Settlement Term
> Sheet.

Settlement Order ¶ 11 [0031].

SLF (as counsel to the AHCCC) timely submitted a fee application pursuant

to the Bankruptcy Court's directive on October 17, 2024, believing that the

Settlement Fee Payment would be granted upon demonstration that it was in fact

owed professional fees that totaled in excess of the negotiated Settlement Fee

Payment.  Docket No. 7754 [0151-0187] (the "Fee Application").  As ordered by the

Bankruptcy Court, and despite having been hired by the AHCCC on a contingency

fee basis, SLF's application accounted for the firm's hours from its initial

engagement with the Faller Creditors through the entry of Settlement Order.  The

Fee Application additionally provided the Bankruptcy Court with a calculation of a

5% contingency fee based on the corporate creditor recovery as per SLF's

engagement terms with the AHCCC (i.e. the negotiating basis for the Settlement Fee

Payment in the first place, which had been reduced somewhat as part of the

negotiations during the mediation).  *Pro se* creditor Sean Xue opposed this Fee

Application.  Docket No. 7786 [0491-0492].  The Bankruptcy Court ruled upon this

Fee Application in its Fee Order on November 12, 2024[4], denying payment of SLF's contingency fee.  The Bankruptcy Court clarified that, rather than asking for time records to support a decision on the Settlement Fee Payment, it had intended to use those records to grant only a partial fee award.  The Bankruptcy Court granted hourly compensation rather than contingency, and it further reduced the scope of allowed fees and expenses to hours between the formation date of the AHCCC and the submission of the Settlement Approval Motion.  In all, the Fee Order reduced SLF's fees from the $1.5 million agreed to by the PEDD in settlement (which was then backed by $390,340.00 of hourly-equivalent work) down to only $128,669.00 plus $414.87 in costs and expenses.

The Corporate Creditor Settlement has otherwise already been implemented, and supplemental distributions have commenced.  Docket No. 7854 [0493-0497].  As a result of SLF's work, over 1900 corporate creditors are likely to receive more than $75 million worth of additional cryptocurrency or cash.   The $1.5 million fee requested is a *de minimis* amount given the extraordinary additional benefit to corporate creditors.

---

[4] The timing of this November 12 order came as a surprise, as the fee application was on the calendar to be heard at the November 13, 2024 Omnibus Hearing.

This appeal arises from the continuing order, beginning with the Settlement Opinion and the Settlement Order, and culminating in the Fee Order, denying the Settlement Fee Payment.

## IV.    SUMMARY OF THE ARGUMENT

The Corporate Creditor Motion was a contested matter that was resolved through a complex mediation process resulting in the Corporate Creditor Settlement. Over twenty parties participated in the mediation, including members of the Ad Hoc Committee of Corporate Creditors and SLF as counsel, the Post-Effective Date Debtors and counsel, the Litigation Trust Administrator and its counsel, Coinbase and its counsel, and the Honorable Philip J. Bentley, who served as mediator. Every provision of the Corporate Creditor Settlement was hotly negotiated, including the Settlement Fee Payment and the specific language surrounding that payment. The $1.5 million Settlement Fee Payment, which itself represented a reduction in SLF's 5% contingency fee, was offered by the PEDD as "partial consideration for the releases…". Settlement Term Sheet ¶ 7 [0043]. For the Bankruptcy Court to pick and choose which provisions it found acceptable violates the essential terms of the Settlement Agreement. How can the PEDD get its negotiated releases, if it is not being required by the Bankruptcy Court to pay the negotiated consideration for those same releases? Furthermore, through the distributions to corporate creditors and the releases issued to various parties involved, the Settlement Agreement has been

11

largely consummated.   By this Appeal, Appellants respectfully request this Court to issue an order directing the Bankruptcy Court to approve the Corporate Creditor Settlement in its entirety, and order payment of $1.5 million to Appellants' law firm SLF.

## V.    ARGUMENT

### A.    Standard of Review

Both approval of a settlement and approval of a fee application are reviewed for abuse of discretion.  *In re Iridium Operating LLC*, 478 F.3d 452, 461 n13 (2d Cir. 2007)*; see Kearney v. Unsecured Creditors Committee*, 987 F.3d 1284, 1296 (10th Cir. 2021) (cert. denied 142 S.Ct. 717 (Mem)); *In re September 11 Property Damage Litigation*, 650 F.3d 145 (2d Cir. 2011).   "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures . . . . or (2) rests its decision on findings of fact that are clearly erroneous."  *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005); *Kearney v. Unsecured Creditors Committee*, 987 F.3d at 1296*; see also In re Celotex Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2012).   Accordingly, legal conclusions are reviewed *de novo* and findings of fact are reviewed for clear error.  *In re Cahill, id.*; *In re Celotex Corp.*, *id.*; *see In re Iridium Operating LLC*, 478 F.3d at 461 n13.

Finality of a decision and ripeness for appeal are jurisdictional and reviewed *de novo.  See In re Provan*, 74 B.R. 717, 719 (9th Cir. B.A.P. 1987).

Standing is jurisdictional and reviewed *de novo*. *See e.g. Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management*, 843 F.3d 561, 566-567 (2d Cir. 2016) (*de novo* standard of review for constitutional standing requirements).

An appellate court may and should consider jurisdictional questions on its own initiative. *See e.g. Chicago, B. & Q. Ry. Co. v. Willard*, 220 U.S. 413, 419 (1911).

**B.    The Appellant's Contentions**

### 1.    The Bankruptcy Court Abused its Discretion by Modifying a Material Provision of the Corporate Creditor Settlement

On motion of a chapter 11 plan administrator, a bankruptcy court may approve a compromise or settlement. Rule 9019(a) Fed. Bankr. P. The Bankruptcy Court correctly reviewed the Corporate Creditor Settlement using the Second Circuit's *Iridium* factors and found that "each of the *Iridium* Factors weighs in favor of the Court approving the Settlement." Settlement Opinion at 22 [0022] (citing *In re Iridium Operating LLC*, 478 F.3d at 455); *see also In re MF Global, Inc.*, 466 B.R. 244, 247-248 (Bankr. S.D.N.Y. 2012). But having performed this analysis and decided that every factor weighed in favor of approval, the Bankruptcy Court's decision to deny the approval in part was a reversible error outside of the scope of discretion.

"The "unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them. . . . . Notwithstanding, a court's discretion is limited and a proposed settlement cannot be piecemealed[.]" *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 393 (Bankr. D.N.J. 2016)  (internal citation to *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) omitted).  "In so doing, the court changes the essential terms of the proposed settlement and violates the purpose and spirit of Federal Rule of Bankruptcy Procedure 9019 or decides issues not necessary.... Instead, the court's limited role is to determine whether the settlement should be approved or disapproved as proposed." *Id.* (quoting *In re McDermott*, 2008 WL 877964, at *5 (Bankr. D.N.J. Mar. 27, 2008) (internal citations and quotations omitted)).  "A bankruptcy court cannot rewrite [a settlement agreement] and, by doing so, approve terms that differ from those to which the parties agreed.  In evaluating a proposed settlement or compromise under Rule 9019, the court must accept or reject the agreement as presented." *In re Central Illinois Energy, L.L.C.*, 406 B.R. 371, 374 (Bankr. C.D. Ill. 2008); *In re Trism, Inc.*, 282 B.R. 662, 668 (8th Cir. BAP 2002).  "It is beyond a district judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement[.]" *In re Air Crash Disaster at John F. Kennedy Intern. Airport…*, 687 F.2d 626, 629 (2d Cir. 1982).  A judge "may not dictate the terms of a class settlement; he should approve or

14

disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." *Deangelis v. Corzine*, 151 F.Supp.3d 356, 361–62 (S.D.N.Y. 2015) (finding bankruptcy court lacked authority to modify terms of a settlement with a class of creditors; internal quotes and citations omitted). Alterations of fee arrangements "cannot be written off as harmless." *Moses v. New York Times Co.*, 79 F.4th 235, 246 (2d Cir. 2023) (holding that a 76% incentive fee award to attorneys was an integral part of the settlement agreement, and the judge approving the settlement had erred by treating the fee as a separate issue).

When a creditor such as Sean Xue objects to bargained attorneys' fees in a class settlement, those fees should be evaluated with the settlement as a whole, based on whether they meet well-established reasonableness standards for professional fees. *Saska v. Metropolitan Museum of Art*, 54 N.Y.S.3d 566, 572-573 (Sup. Ct. N.Y. Cty. June 15, 2017) (enumerating factors substantively similar to those codified in 11 U.S.C. § 330(a)(3)); *Gordon v. Verizon Communications, Inc.*, 148 AD3d 146, 164-166 (1st Dept. 2017); *Fiala v. Metropolitan Life Ins. Co., Inc.*, 899 N.Y.S.2d 599, 610-611 (Sup. Ct. N.Y. Cty. March 3, 2010). As a settlement agreement cannot be "piecemealed," the determination on fees is part and parcel of the determination of the fairness and reasonableness of the compromise as a whole.

SLF's professional fees were reasonable under these standards and should have been approved as part of the overall Corporate Creditor Settlement. *See*

15

discussion *infra* at C.  The Settlement Fee Payment was a material, bargained-and-agreed-to term of the settlement, and such terms cannot be changed by a court on a motion to approve a settlement.  The AHCCC's professional fees were explicitly to be paid by the PEDD "as partial consideration" for a series of broad releases:

> 7. <u>Compensation for the Ad Hoc Committee of Corporate Creditors</u>: The Parties recognize the contribution of the Ad Hoc Committee of Corporate Creditors and its members to the Debtors' estate and to the bankruptcy process in bringing its motions and in participating in the Mediation. **As a material part of this settlement and as partial consideration for the releases contemplated herein, the Parties agree that the Post-Effective Date Debtors will compensate the Ad Hoc Committee of Corporate Creditors and its counsel in the aggregate amount of $1.5 million.**

Settlement Approval Motion, Exhibit 1 (Settlement Term Sheet) § 7 [0130] (emphasis added).  This language still exists in the Settlement Term Sheet as approved and ordered by the Bankruptcy Court.  Settlement Order, Exhibit 1 (Settlement Term Sheet) § 7 [0043].  The Bankruptcy Court improperly and inequitably approved the PEDD's general releases, but not the very consideration that was negotiated in exchange for those same releases.

Due to the fact that the Corporate Creditor Settlement is largely implemented (Docket No. 7854 [0493-0497]) and most Eligible Corporate Creditors have already received their additional distributions, it would be unreasonable to halt or reverse the settlement at this stage.  The approval of the Corporate Creditor Settlement is

effectively a done deal, and impossible to undo. Unless the PEDD's releases can be somehow reversed, the Bankruptcy Court's erroneous decision unfairly deprived the AHCCC of the full value of its bargain and has subjected SLF to undue prejudice regarding its professional fees.

In short, a deal is a deal. The PEDD offered and agreed to payment of the AHCCC's professional fees as consideration for AHCCC's release of claims. Those fees were very reasonable, a contingency of only 5% for over $75 million of recovery. Now, because the Bankruptcy Court improperly decided piecemeal, the AHCCC has released its claims but not received its consideration. Because the Bankruptcy Court found that the Corporate Creditor Settlement met the *Iridium* factors, and because the Settlement Fee Payment is a reasonable award of professional fees, the Corporate Creditor Settlement should have been wholly approved. To do otherwise inescapably causes undue harm.

### 2. The Bankruptcy Court Abused its Discretion by Applying Incorrect Legal Standards to the Fee Application

In the Fee Order ruling on the Fee Application, the Bankruptcy Court considered the AHCCC's professional fees and expenses to be administrative expenses under 11 U.S.C. § 503(b)(3)(D) and (b)(4). Fee Order at 7 [0077]. The Bankruptcy Court concluded that "SLF has not made any showing in the Application that it is entitled to the Contingency Fee from the Post-Effective Date Debtors for its 'substantial contribution' to the case. …. In fact, the Application makes no mention

17

of 'substantial contribution' whatsoever." *Id.*  There are sound legal reasons for the noted omission, and the Bankruptcy Court's application of "substantial contribution" analysis is erroneous in multiple ways.

**There was No Bankruptcy Estate to Preserve and No Justification to Require a Showing of Substantial Contribution to a Non-Existent Estate**

First, the obligation of the PEDD to pay SLF's fees and expenses was their assent to that obligation in the Corporate Creditor Settlement.  As discussed in the parties' Joint Motion at ECF 7661, there is no Estate to preserve after the effective date of a confirmed Chapter 11 plan.  *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 403 (N.D. Tex. 1992)."  Fee Application ¶ 9 [0154].  The PEDD's property, previously held in the bankruptcy estate, vested in the PEDD upon the Plan's effective date, free and clear of all claims and interests in bankruptcy except and encumbered only as provided for in the Plan itself.  *See* 11 U.S.C. § 1141(b)-(c) .

While the creation and confirmation of a chapter 11 plan is a quintessential feature of bankruptcy, breach of that plan post-confirmation is a contract matter between the debtor and its creditors.

> If a reorganized debtor defaults under a plan, creditors have several options, including enforcing the plan terms in any court of competent jurisdiction. . . .
>
> As an additional option, plan creditors may, under certain circumstances, file an involuntary bankruptcy proceeding against a reorganized debtor under Bankruptcy Code § 303.

*In re Braude Jewelry Corp.*, 333 B.R. 156, 159 (Bankr. N.D. Ill. 2005) (quoting *In re Troutman Enterprises*, 253 B.R. 8, 11-12 (6th Cir. BAP 2000)).  Plan breach claims may be pursued outside of bankruptcy because the exclusive control of the bankruptcy court over those assets has ended.

The Settlement Approval Motion relied upon this principle of law and sought the Bankruptcy Court's approval only out of " an abundance of caution."  Settlement Approval Motion ¶ 63 [0112].  This caution was warranted because of the closeness of the subject matter with the administration of the chapter 11 Plan, and it proved to be well-founded caution as the Bankruptcy Court identified potential problems with creditor equity if any part of the Settlement Fee Payment were to be paid to creditors. Settlement Opinion at 24-25 [0024-0025] ("While the Court does not take issue with the reimbursement of actual professional fees . . . . it is not evident from the plain language of the Settlement Term Sheet whether this payment is, in fact, for fees alone.").  While accepting the contention that the PEDD could pay the professional fees, the Bankruptcy Court held:

> As it is unclear whether the $1.5 million "cherry on top" bonus—available solely to the Ad Hoc Committee of Corporate Creditors and its counsel—is comprised solely of professional fees, it is not approved.  Rather, counsel to the Ad Hoc Committee of Corporate Creditors may file an application for payment of fees that must include detailed and itemized time records reflecting the work performed from the time of its engagement through the execution of the Settlement Term Sheet.  **Only those amounts, as the**

19

**Post-Effective Date Debtors recognize, may be paid in accordance with Article II.B.4 of the Plan.**

Settlement Opinion at 26 [0026] (emphasis added).

As discussed above, this method of handling the settlement by parts was itself an error of law. But every reasonable indication was that the professional fees requested would be paid so long as they were substantially documented as actual professional fees. Where this error became prejudicial was in the denial of the fee application in the Fee Order.

Essentially, the Bankruptcy Court shifted the goalposts. The Settlement Opinion stated clearly that the Bankruptcy Court's concern was whether the Settlement Fee Payment consisted solely of professional fees (which the PEDD could pay under the Plan), and the payment was only a problem insofar as the payment did not solely consist of professional fees. But once the Fee Application was submitted to demonstrate that the Settlement Fee Payment was indeed solely for professional fees, the Bankruptcy Court should have been bound by its approval of the settlement and not have been able to deny the fees. Instead, the Bankruptcy Court treated the Fee Application as an administrative expense claim under 11 U.S.C. §§ 503(b)(3)(D) and (b)(4), stating that SLF had not shown it had made a "substantial contribution" to justify "such amounts from the Debtors' estates." Fee Order at 8 [0078]. Again, this is where the Bankruptcy Court erred in its decision. Because Celsius had confirmed its Plan of Reorganization, technically there are no

20

estates[5] and therefore, section 503(b) of the Bankruptcy Code did not apply.    The payment of the AHCCC's professional fees "is not subject to the requirements of and scrutiny under section 503(b) of the Bankruptcy Code because the Settlement took place post-confirmation, and post-Effective Date."    Settlement Approval Motion ¶ 60 [0111].    To subject it to such requirements, to require "substantial contribution" to a non-existent bankruptcy estate, is a clear error of law.

**The Bankruptcy Court Approved and then Disregarded a Chapter 11 Plan Which Vested Authority in the Post-Effective Date Debtors**

Bankruptcy courts typically retain equitable jurisdiction over the administration of chapter 11 plans, including payments of related fees of professionals hired prior to confirmation under 11 U.S.C. § 327(a).  *In re Charis Hosp., L.L.C.*, 360 B.R. 190, 199 (Bankr. M.D.La. 2007).  But in the present case, SLF was not retained pre-confirmation or under § 327(a); rather, SLF sought payment of its fees pursuant to the PEDD's authority under the Plan.  As approved by the Bankruptcy Court, the Plan terminated the bankruptcy oversight of settlements, resolution of claims, and payments of professional fees.  In fact, millions of dollars in professional fees have been paid by the PEDD without Bankruptcy

---

[5] Even if there had been an estate in place, the extraordinary circumstances would likely have justified *nunc pro tunc* approval of fees.  Because distributions under the Plan had begun, there was a need for immediate action and investigation into the circumstances of the limited cryptocurrency distributions to corporate creditors to avoid undue prejudice to their rights under the plan, and the parties considered the issues to be highly complicated.  *See In re Pilgrim Medical Center, Inc.*, 574 B.R. 523, 531-532 (Bankr. D.N.J. 2017) (approving *nunc pro tunc* fee application of counsel for committee of unsecured creditors who provided immediate services before their application to employ was ruled on); *see also e.g. Matter of Ladycliff Coll.*, 35 B.R. 111, 113 (Bankr. S.D.N.Y. 1983) ("The court, however, may authorize a person or service, *nunc pro tunc*, if to do otherwise would be unfair and inequitable.")

21

Court approval, including the fees of the PEDD's professionals who participated in the mediation of the Corporate Creditor Settlement.

A bankruptcy court may authorize a plan administrator to compromise or settle controversies within a class of controversies without further hearing or notice. Rule 9019(b) Fed. Bankr. P. As part of approving the chapter 11 Plan, the Bankruptcy Court granted such authorization to the PEDD with respect to creditors:

> Any Claim . . . may be adjusted or expunged on the Claims Register at the direction of the Debtors, the Post-Effective Date Debtors, or the applicable Litigation Administrator(s) without . . . having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

Settlement Approval Motion ¶ 61 [0111] (quoting Plan, Art. VII.D, at pp. 67–68, Docket No. 4289 at 76-77 [0275-0276]). The Plan also granted the PEDD substantial authority to hire and compensate professionals, and it terminated the applicability of the Bankruptcy Code and any requirement to seek an order or approval from the Bankruptcy Court.

> From and after the Confirmation Date, the Debtors, or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Post-Effective Date Debtors, as applicable. **After the Confirmation Date, any requirement that Professionals comply with sections 327 through 331**

22

> **and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.**

Plan, Art II.B.4 [0235-0236] (emphasis added).  As a result, even when the Bankruptcy Court was to be consulted, under the Plan it had to provide the most deferential review possible to the decisions of the PEDD.

The Confirmation Date occurred on November 9, 2023, and these provisions became effective.  *Notice of Filing of Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed For Miningco Transaction)* (Docket No. 4289) at 1 [0200].  The Plan went into effect on January 31, 2024 (the effective date).  Settlement Opinion at 5-6 [0005-0006] (citing Docket No. 4298, not included in record on appeal).  By the plain language of the Plan, and as would be expected under 11 U.S.C. §§ 1141(b)-(c) , the Bankruptcy Court no longer had authority over how the PEDD used Plan funds for professional fees or conducted its ordinary business.

In short, the PEDD agreed to pay SLF's professional fees as part of the Corporate Creditor Settlement.  Under the terms of the Plan, the PEDD had full authority to pay the Settlement Fee Payment as long as doing so was reasonable. Having approved the language divesting its authority, the Bankruptcy Court's Fee Order denying and reducing the payment of professional fees based on more-

stringent standards is simply arbitrary and capricious. Denying the Fee Application without consideration of the PEDD's business judgment agreeing to pay those fees was not properly within the Court's jurisdiction and therefore was an abuse of discretion.

## C. In Any of These Cases, the Settlement Fee Payment Consisted of Reasonable Professional Fees and Should Be Paid

While the general rule is that litigants pay their own attorney's fees, it is a common exception that costs and fees can be recovered in certain causes of action and via contractual obligation. Both situations are present here – a recovery that benefits an entire class of litigants can be paid from the pre-distribution pool of funds, and the PEDD agreed to pay SLF's fees as part of the settlement of a post-confirmation breach of a chapter 11 plan, pursuant to its authority under that Plan. In both cases, the Bankruptcy Court applied the incorrect standards of law as to whether those fees should be paid.

First, the Bankruptcy Court erred by applying the pre-confirmation doctrine of substantial contribution as though the fees were administrative expenses to a bankruptcy estate. Second, although the Bankruptcy Court may have remnant equitable authority over debtors' payments of professional fees generally, in the present case the Bankruptcy Court approved a Plan which severed its authority from payment of professional fees, and the confirmation of that plan ended the Bankruptcy Court's *in rem* jurisdiction over the assets used for payment both by the

24

text of the Plan and by operation of 11 U.S.C. § 1141(b).    The PEDD should therefore be free to pay the AHCCC's professional fees so long as those fees are reasonable, and reasonable they are.

The Plan is clear that the PEDD is authorized to pay reasonable professional fees "without any further notice to or action, order, or approval of the Bankruptcy Court".  Plan, Art. II.B.4; *see* Settlement Approval Motion ¶ 62 [0111].  "After the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court." *Id.*   Similarly, it is stated in the Plan that PEDD can settle claims.  *See* Settlement Approval Motion ¶ 61 [0111].    The confirmation of the Plan substantially removed bankruptcy encumbrances over the reorganized debtors in return for the Plan's promises to compensate creditors.  *See* 11 U.S.C. § 1141(b)-(c).  There is no bankruptcy estate for the Bankruptcy Court to preserve. *In re Dahlgren Int'l, Inc.*, 147 B.R. at 403.

Bankruptcy jurisdiction is substantially *in rem* – i.e. over the bankruptcy estate – and this jurisdiction ended on confirmation of the Plan, but jurisdiction can also extend *in personam* to cases "arising under" the Bankruptcy Code.  28 U.S.C. § 1334(b).  Though that *in personam* jurisdiction could arguably apply to the present

matter, it is nonetheless unavailing to grant the Bankruptcy Court the ability to change substantive terms of a settlement, rather than simply approving or denying the compromise.  *See* Contention 1 *supra*.

Furthermore, even if the Bankruptcy Court had some remnant equitable jurisdiction over fees generally that applies to the Settlement Fee Payment, Plan language notwithstanding (*see e.g. In re Charis Hosp., L.L.C.*, 360 B.R. at 199), substantial contribution is not the correct standard for adjudicating such fee requests. Rather, the proper standard is whether those fees are reasonable under the standards of 11 U.S.C. § 330.  *See In re Chewning & Frey Security, Inc.*, 328 B.R. 899, 911-912 (N.D. Ga. 2005).

Both contingent fee arrangements and hourly "lodestar" approaches are available to judges in common fund cases and can be found reasonable.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Under the proper standard of reasonability, the Settlement Fee Payment was an eminently reasonable payment of professional fees.

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

26

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). Across a handful of months, SLF recorded 408 hours of work on corporate creditor matters, approximately half before the formation of the AHCCC and half after. Fee Application at 2 [0152], Exhibit C [0166-0187]. SLF charged rates commensurate with market standards for the expertise of its professionals, both in terms of the contingency fee and in terms of the lodestar rates. *See id.*; *see also id.* ¶¶ 21-22 [0156-0157]. The services provided were beneficial to the present post-bankruptcy estate and benefited an entire class of improperly-disadvantaged corporate creditors, many of which consisted of family retirement entities. The services were performed within a reasonable amount of time commensurate with the complexity and importance of the corporate creditors' treatment under the Plan. SLF's staff have demonstrated skill and expertise in the

27

bankruptcy field representing creditors; no other firm recognized the significance of the failure to allow distribution of cryptocurrency to non-top-100 corporate creditors and stepped up to protect their rights under the Plan. And finally, the requested compensation was "based on the customary compensation charged by comparably skilled practitioners in other than cases under title 11." Fee Application ¶ 25 [0157]. It is simply inequitable for any creditor to get a free ride off of SLF's services and not have to pay for their proportionate share.

"[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class . . . the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d at 47. Though the Corporate Creditor Settlement was fully funded, without need to pool and distribute monies *pro rata* as a new common or equitable fund[6], SLF did indeed succeed in securing compensation for a class of creditors who suffered injury in common (as represented in extraordinary circumstances and on short notice by the AHCCC). There is no non-arbitrary reason to deny compensation to an attorney who achieves complete recovery when that compensation would be allowed if only a lesser result had been achieved.

---

[6] In an alternative interpretation, the Corporate Creditor Settlement created a common fund (drawing from the PEDD's claims reserves) consisting of an amount sufficient to pay both 100% of corporate creditor relief and SLF's professional fees.

As a matter of law, a 5% contingency fee is well within the bounds of reasonableness for the type of representation, work, and realized benefit in this case. As a case in point, the proposed class counsel in another S.D.N.Y. cryptocurrency mass action was awarded 20% contingency as recently as October of 2024. *Roberts et al. v. Ehrlich et al.*, Case No. 1:22-cv-09590-PKC (S.D.N.Y. October 8, 2024); *cf. Moses v. New York Times Co.*, 79 F.4th at 246 (reversing approval of 76% incentive fee award – not necessarily because it was excessive, but because the judge abused discretion by considering the fee separately from the settlement agreement specifying the amount).   There is no reason under applicable law to deny the Settlement Fee Payment.

But even if it was proper to instead award an hourly lodestar award, it was not proper for the Bankruptcy Court to reduce the compensated hours.  The Court ruled that it had limited professional fees to only those incurred from the narrow range of dates from the formal formation of the AHCCC to the execution of the Corporate Creditor Settlement's term sheet at mediation.   Fee Order at 9 [0079] (citing Settlement Opinion at 26 [0026]).  But "[i]t is undisputed that an attorney may recover fees for work performed on a plaintiffs' individual claims, including work performed prior to class certification, if that work benefitted the class." *Dubin v. E.F. Hutton Group, Inc.*, 845 F.Supp. 1004, 1015 (S.D.N.Y. 1994).   Even if, *arguendo*, the language of the Settlement Opinion were as unambiguous as the

Bankruptcy Court implies and everything else about that denial was correct and proper, limiting the date range as it did clearly runs counter to established law that recognizes that a creditor counsel's efforts can benefit a class of creditors well before that class is formally organized and represented. *See also e.g. In re Pilgrim Medical Center, Inc.*, 574 B.R. 523 (Bankr. D.N.J. 2017) (finding that representatives for a creditor committee, though their retention application was never heard before being mooted, were entitled to professional fees *nunc pro tunc* for work benefitting committee-represented creditors).

At the June 28, 2024 Omnibus Hearing, it was clear that the issues raised in the Faller Creditor Motion had already transcended the Faller Creditors' lone interests. Even though argument on the Faller Creditor Motion had been adjourned that day, the Bankruptcy Court took particular time to note that the issues raised had spurred joinder motions and likely affected hundreds of creditors.

The Faller Creditor Motion and joinders thereto were the only items on the docket raising these corporate creditor issues (though there was some overlap with the problems raised by a group of Australian creditors, both corporate and individual, who had not yet received distributions). This remained true through the organization of the AHCCC and through the mediation, which also provided relief to the Australian creditors. The next filing on these issues was the motion to approve the settlement reached in mediation – a mediation that was the direct result of the Faller

Creditor Motion.  Clearly, once the Faller Creditor Motion was on the docket, and certainly after the first joinder thereto, the substantive rights being litigated were those of every non-top-100 corporate creditor.  Even if substantial contribution had been the correct standard to apply, the Bankruptcy Court was nevertheless clearly erroneous in concluding that SLF's work on the Faller Creditor Motion was not necessary to the ultimate outcome or beneficial to corporate creditors as a whole.

The Bankruptcy Court's decision also denied fees for the motion work and advocacy required to get the Corporate Creditor Settlement approved after the Settlement Term Sheet was executed.  Even by the standards the Bankruptcy Court used, there is no non-arbitrary reason to exclude those hours.

In short, every reasonableness factor in 11 U.S.C. § 330 weighs in favor of approving the Settlement Fee Payment or, at the very least, approving payment of the full lodestar value of SLF's work on corporate creditor issues.  To apply inapplicable standards to the Fee Application and to arbitrarily limit the amount of eminently reasonable fees was abuse of discretion by the Bankruptcy Court.

## D.    The Settlement Order is Properly and Timely Appealed Here

The U.S. Trustee indicated in a status conference with this Court that this appeal was not timely as to the Settlement Order, being more than 14 days after entry.  Ultimately, this argument is unavailing, because the Settlement Order's denial of fees was not merely a collateral issue but an invitation to resolve the issue of

whether the fees requested were an allowable term of an approved settlement. The Settlement Fee Award was a substantive element of the settlement bargain, and denying that element of the bargain was an (erroneous) merits decision. However, the denial left open the possibility that the fees would be paid in total once they were clarified to be fully allowable. The core merits issue of whether the AHCCC would receive its full bargained settlement was left unresolved, so the Settlement Order was not a final order when entered. The prejudicial harm, final denial of the Settlement Fee Payment, only occurred on entry of the Fee Order.

The interplay of Rules for the timeliness of an appeal is complicated. The time a judgment is entered is when it is entered on the docket by the bankruptcy clerk, or, if FRBP 7058 applies, the separate document requirements of FRCP 58 also apply. FRBP 8002(a)(5). FRBP 7058 only applies if the dispute is an adversary proceeding within the scope of FRBP 7001. Otherwise, contested matters proceed under FRBP 9014 and Rule 7058 does not apply by default. FRBP 9014(c)(1). The present dispute had not yet reached the complaint stage when it settled, so it was most likely proceeding under FRBP 9014 at the time of Settlement Order. However, certain contested matters are required to be brought as an adversary proceeding under FRBP 7001, so the present dispute would have certainly become an adversary proceeding if it had continued. If the PEDD had continued to contest the relief sought in the Faller Creditors Motion rather than mediating a resolution, the AHCC

32

could only have obtained a money judgment or specific performance of a crypto distribution via an adversary proceeding. *See* FRBP 7001(7); *see In re Hood Farms, Inc.*, 639 B.R. 788, 790 (Bankr. M.D.Ga. 2022). Since FRBP 7001 requires an adversary proceeding for such relief, and the Corporate Creditor Settlement pre-empted the need to seek such relief formally, it is reasonable to apply FRBP 7058 here to a judgment on that settlement. The final result: FRBP 7058 and FRCP 58 should apply to the orders and decisions related to this dispute, and this result supports the analysis under FRBP 8002.

Generally, analysis of FRBP 8002 coincides with analysis of Rule 4 Fed. App. P. and the two should be interpreted consistently. *In re Arrowhead Estates Development Co.*, 42 F.3d 1306, 1310-1311 (9th Cir. 1994); *see also Mardick v. Stover*, 329 F.2d 561, 563 (9th Cir. 1968). An appeal must be filed within 14 days after the entry of the judgment or order appealed from. FRBP 8002(a)(1); *see* FRAP 4(a)(1). An appealable judgment must be final, and a final judgment does not occur until there has been a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798 (2015) (internal quotations and citation omitted). A bankruptcy order that orders relief but does not set the amount thereof is not final for purposes of appeal until the amount is specified. *In re Blasingame*, 525 B.R. 675, 678 *et seq.* (6th Cir. B.A.P. 2015).

33

A final judgment must leave no unresolved issues requiring a separate document. *See* FRCP 58(a). If a separate document is required[7] but none is filed, the incomplete ruling is deemed entered after 150 days. FRCP 58(c)(2)(B). Otherwise, the appealable order is not deemed to have been entered until the required separate document is entered on the docket. FRCP 58(c)(2)(A). All together, the deadline to file a notice of appeal is 164 days after entry of an insufficiently-final order or, if all required separate documents are filed, 14 days after entry of the last document disposing of the merits issues. *See* Fed. R. Civ. P. 58(c)(2)(B); *In re Blasingame*, 525 B.R. at 681; *In re Litas Intern., Inc.*, 316 F.3d 113, 119 (2d Cir. 2003); *Bosman v. Glod*, 2015 WL 9244275 at *2 (Bankr. N.D.N.Y. 2015).

In support of Appellant's position with respect to the timeliness of its appeal, the Second Circuit pragmatically states: "[A]n order awarding attorneys' fees and costs is not an appealable final order until the amount of fees and costs has been set by the district court." *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 41 (2d Cir. 2013) (quoting *Honeywell Int'l, Inc. v. Purolator Prods. Co.*, 468 F.3d 162, 164 (2d Cir. 2006)). The result: the Settlement Order was not final until Fee Order set the amount of fees and costs awarded. The Settlement Order only began the 164-day period for notice of appeal. Upon entry of the Fee Order, the Settlement Order was

---

[7] FRCP 58 contains exceptions for motions for fee awards under FRCP 54, but these exceptions are not relevant to the present case, where fees were sought other than under FRCP 54.

deemed entered under FRCP 58 and the 14 day appeals period began.  The immediate Notice of Appeal was filed on November 26, 2024, 14 days after the Fee Order.  The Notice of Appeal was timely.

It is not correct to attempt to distinguish based on this appeal's subject matter involving professional fees.  The Supreme Court has held that "[a]s a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200 (1988).  But "as a general matter" does not mean "always." When an order substantively links a party's right to seek fees to the merits of the order, a motion to grant fees operates as a substantive challenge and tolls time for appeal.  *See Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th 1317, 1326 (11th Cir. 2023) ("[Fee motion] was not a standard post judgment motion for costs or fees, collateral to the merits of the appeal.  Instead, the order of dismissal itself is about whether to award costs and fees.").  *Budinich* contemplates a motion for recovery of fees that is considered distinctly from the merits of the case, and that is not what happened here.  The relief requested by the AHCCC and PEDD was the approval of a settlement.  As brought to the Bankruptcy Court, professional fees were not a separate issue but one element of many in the bargain to be approved.  The PEDD's payment of AHCCC's fees was and is a "material term" of the Corporate Creditor Settlement, and the (erroneous) denial of a material term of a settlement is clearly a

substantial, merits issue. Only the Bankruptcy Court's error approving and denying an entire settlement term-by-term separated the issue of fees.

Finally, even if, *arguendo*, Rule 58 did not apply (e.g. because the Settlement Order were construed as a final fee award of $0 or because Rule 7058 did not apply), nevertheless the Fee Application tolled the deadline for filing a notice of appeal. FRAP 4(a)(4)(A)(iv) provides that motion to alter or amend a judgment under FRCP 59 causes the time for appeal to run from the entry of the last order disposing of such motion. *See also* FRBP 9023 (incorporating FRCP 59 and requiring motions within 14 days). Any motion seeking a substantive change of a judgment, regardless of form, is construed as a Rule 59(e) motion for purposes of appeal timing. *See Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397, 401 (2d Cir. 2000); *Yost v. Stout*, 607 F.3d 1239, 1243 (10th Cir. 2010); *see also Marine Midland Bank v. Slyman*, 995 F.2d 362, 364-365 (2d Cir. 1993) (tolling appeals period when appellant filed motion functionally equivalent to motion to amend). A fee application can serve as a Rule 59(e) motion to a judgment even in light of *Budinich* when that judgment's determinations on the merits affects a party's right to recover fees. *See Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th at 1326 *supra*. The Settlement Order impaired the AHCCC's contractual right to recover fees under an approved settlement. The Fee Application, filed within 14 days, therefore sought to alter or amend the Settlement Order and tolled the appeals period.

36

In sum, Appellants appeal is timely because until the Fee Order was rendered, the Bankruptcy Court's ruling on the Settlement Agreement was interlocutory. Interlocutory orders cannot be appealed until leave is granted to appeal or until they become final. When the Bankruptcy Court's ruling subsequently became final with entry of a separate document, the Notice of Appeal was timely entered.

## VI.    CONCLUSION

Appellants have dedicated nine months to insuring equity for all corporate creditors under Celsius' Plan of Reorganization. As a result of Appellants legal acumen and diligence, corporate creditors have received more than $75 million in additional distributions. The PEDD got their sought-after releases. Because the fee provision in the Settlement Agreement was an essential part of the agreement the Bankruptcy Court erred in "picking and choosing" which provisions of the agreement to approve. The Bankruptcy Court's denial of the Fee Application should be vacated, and the PEDD should be permitted to pay SLF's bargained-for $1.5 million in professional fees, as they agreed to under the Corporate Creditor Settlement and as per their authority in the Plan, without further delay.

The only reasonable, practical, and fair remedy is for the entire settlement to be approved as it was presented, including the $1.5 million Settlement Fee Payment.

###

DATED: January 31, 2025

**SARACHEK LAW FIRM**

/s/Zachary E. Mazur
Joseph E. Sarachek, Esq.
Zachary E. Mazur, Esq.
Paul J. Combe, Law Student Under Supervision
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
joe@saracheklawfirm.com
zachary@saracheklawfirm.com

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)
### Form 417C

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because:

   [**X**] this brief contains 9221 words, **or**

   [ ] this brief uses mono-spaced typeface and contains ___ lines of text.

2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because:

   [**X**] this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, **or**

   [ ] this brief has been prepared in a mono-spaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*/s/Zachary E. Mazur*         January 31, 2025
Joseph E. Sarachek, Esq.         Dated
Zachary E. Mazur, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Southern District of New York by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that I have sent the foregoing document by email to the following parties:

**U.S. Trustee**
Shara Cornell, Esq.

**Sean Xue**

/s/Zachary E. Mazur
Zachary E. Mazur, Esq.
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
zachary@saracheklawfirm.com

40