**CASE NO.: 1:24-cv-09278-JSR**

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Celsius Network, LLC

v.

United States Trustee

---

Appeal from the U.S. Bankruptcy Court for the Southern District of New York,
Hon. Martin Glenn presiding, Case No. 22-10964-mg

---

**APPELLANT'S REPLY TO BRIEF OF APPELLEE, WILLIAM K.
HARRINGTON, AS UNITED STATES TRUSTEE**

---

Joseph E. Sarachek, Esq.
Zachary E. Mazur, Esq.
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
joe@saracheklawfirm.com
zachary@saracheklawfirm.com

i

# TABLE OF CONTENTS

I.   U.S. TRUSTEE'S ARGUMENT ON TIMELINESS FAILS BECAUSE AN ESSENTIAL TERM OF THE SETTLEMENT AGREEMENT WAS NOT RESOLVED UNTIL THE FEE APPLICATION ORDER........................................2

    A.   U.S. Trustee's Focus on *Bullard-Ritzen* Analysis is Unavailing..........3

    B.   U.S. Trustee's Timeliness Argument is Belied by its own Authority ..5

    C.   U.S. Trustee Fails to Meaningfully Distinguish On-Point Law on Finality    ..............................................................................................6

    D.   Rule 58 Should be Applied to This Controversy to Toll the Period to Notice an Appeal ......................................................................................8

II.  U.S. TRUSTEE CONFLATES SETTLEMENT PIECEMEALING WITH CONDITIONAL APPROVAL OF ENTIRE SETTLEMENT .............................10

III. U.S. TRUSTEE FAILS TO ADDRESS PEDD'S POST-PETITION STATUS .........................................................................................................19

IV.  CONCLUSION...................................................................................20

CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)..................................21

CERTIFICATE OF SERVICE ..............................................................................22

# TABLE OF AUTHORITIES

### Cases

*Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978) ....................................................9

*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) ............................................. 3, 4, 6

*Deangelis v. Corzine*, 151 F.Supp.3d 356 (S.D.N.Y. 2015)....................................11

*Emergency Recovery Inc. v. Hufnagle*, 77 F.4th 1317 (11th Cir. 2023) ..............7, 9

*Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 FN 3 (2006) ....................................................................................................................4

*In re Air Crash Disaster at John F. Kennedy Intern. Airport…*, 687 F.2d 626, 629 (2d Cir. 1982)........................................................................................................18

*In re Arrowhead Estates Development Co.*, 42 F.3d 1306 (9th Cir. 1994)..............6

*In re Associated Gas & Elec. Co.*, 149 F.2d 996 (2d Cir. 1945)...................... 12, 13

*In re Blasingame*, 525 B.R. 675 (B.A.P. 6th Cir. 2015)............................................8

*In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990)...........................14

*In re Dahlgren Intern., Inc.*, 147 B.R. 393 (N.D. Tex. 1992) .................................19

*In re Final Analysis, Inc.*, 417 B.R. 332 (Bankr. D. Md. 2009) ....................... 15, 16

*In re GOL Lineas Aéreas Inteligentes, S.A.*, 659 B.R. 641 (Bankr. S.D.N.Y. 2024) ..............................................................................................................................15

*In re Hawks Prairie Investment, LLC*, 2010 WL 5257227 (Bankr. W.D. Wash. Dec. 17, 2010) ............................................................................................................15

*In re Palacios*, 2016 WL 361569 (Bankr. S.D. Tex. 2016)............................. 16, 17

*In re Rivermeadows Assocs., Ltd.*, 185 F.3d 875, 1999 WL 448822 (10th Cir. 1999) ....................................................................................................... 5, 6, 14

*In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)................4

*In re Warner Communications Securities Litigation*, 798 F.3d 35 (2d. Cir. 1986).11

*In re Wright*, 545 B.R. 541 (Bankr. S.D. Tex. 2016) ...................................... 12, 13

*Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397 (2d Cir. 2000) ............................7

*Marine Midland Bank v. Slyman*, 995 F.2d 362 (2d Cir. 1993) ...............................7

*Perez v. AC Roosevelt*, 774 F.3d 39 (2d Cir. 2013)................................................6

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020)..................... 3, 4, 5

## Rules

Fed. R. App. P. 4 ................................................................................................9

Fed. R. Bankr. P. 7001 .......................................................................................9

Fed. R. Bankr. P. 7058 .......................................................................................8

Fed. R. Bankr. P. 8002 .......................................................................................9

Fed. R. Bankr. P. 9014 .......................................................................................8

Fed. R. Bankr. P. 9019 .....................................................................................17

Fed. R. Bankr. P. 9023 .......................................................................................9

Fed. R. Civ. P. 58 ...........................................................................................8, 9

Fed. R. Civ. P. 59 ...............................................................................................9

### Statutes

11 U.S.C. § 1141(b) ..........................................................................................19

The Ad Hoc Committee of Corporate Creditors ("Appellant" or "AHCCC") herein replies and responds to the *Brief of Appellee, William K. Harrington, as United States Trustee* (the "UST Brief"), which was filed in this appeal by the United States Trustee ("Appellee" or the "UST"), and which addresses the Appellant's Opening Brief (the "Opening Brief").[1]

First, the UST disputes the AHCCC's interpretation of the Settlement Order, specifically with respect to its finality. This interpretation is significant, because whether the Settlement Order was final or not determines what law decides whether this appeal is timely and properly filed under this Court's jurisdiction. Given the open-ended language of the Settlement Order, the just and legally correct result is that the instant appeal is timely.

Second, on the merits, the UST urges this Court to sanction the Bankruptcy Court's piecemeal approval of the Settlement Agreement. Doing so would set a dangerous precedent, which will discourage parties from settling compromises in bankruptcy disputes. Once parties bargain for terms, carefully balancing the exchange of valuable consideration, deliberately crafting the language of an agreement, it cannot be permitted for a bankruptcy court to unilaterally and materially alter that balance. A deal is a deal. If two parties agree to settle a dispute for a million dollars, can a bankruptcy court "approve" the same settlement for a

---

[1] Undefined terms used in this Reply have same meaning as used in the Opening Brief

1

lesser amount and bind the parties without their consent?  No.  What is the point of parties negotiating and reaching settlement terms, if a bankruptcy court can simply discard the agreement and impose its own terms?  The caselaw is clear that agreements must be approved or denied as a whole, and unilateral alterations of material terms are not permitted.

## I.  U.S. TRUSTEE'S ARGUMENT ON TIMELINESS FAILS BECAUSE AN ESSENTIAL TERM OF THE SETTLEMENT AGREEMENT WAS NOT RESOLVED UNTIL THE FEE APPLICATION ORDER

The Settlement Order left unresolved the merits issue of the AHCCC's bargained-for right to have the PEDD pay $1.5 million of professional fees to AHCCC's counsel (i.e. the Settlement Fee Payment).  The Settlement Order denied the Settlement Fee Payment, but simultaneously gave AHCCC's counsel a window of 14 days to submit a fee application.  The Settlement Agreement itself describes the Settlement Fee Payment as a "material" term of the bargain, and the conditional language in the Settlement Opinion affirmed that "the [Bankruptcy] Court does not take issue with the reimbursement of actual professional fees the Ad Hoc Committee of Corporate Creditors incurred."  Settlement Opinion at 24, APPX0024.  The language of the Settlement Order is consistent, providing that "the intent and effect of this Order [is] that the Settlement and the compromises and agreements contained therein are approved in all respects and all relief contemplated by the Settlement is hereby granted."  Settlement Order ¶ 10, APPX0031.  The AHCCC's reasonable

understanding was that the alleged "cherry-on-top" payments (i.e. to committee members) *would not* be approved, but professional fees *were* approved, and that all that remained was documenting the actual fees with the Fee Application.

The UST, on the other hand, argues that the Settlement Order was a complete and final ruling on the settlement that approved $0 in fees. This interpretation primarily relies on the text of the Settlement Order itself, which omits the reasoning from the denial of the Settlement Fee Payment and does not invite counsel to the AHCCC to submit a fee application until later in the order. Settlement Order ¶ 2, APPX0029; *cf.* ¶ 11, APPX0031. Though the fee application was explicitly contemplated in the Settlement Order, the UST argues that this request was optional and ancillary, despite the plain language of the Settlement Agreement describing it as a material term.

The UST signaled that it would be making a timeliness argument in a January 3, 2025 telephonic court conference. The Appellant's Opening Brief addressed the UST's interpretation and provided caselaw clearly in support of the Settlement Order's non-finality. *See e.g.* Opening Brief at 36. The UST's attempts to distinguish that caselaw are unconvincing. *See e.g.* UST Brief FN 5.

## A.    U.S. Trustee's Focus on *Bullard-Ritzen* Analysis is Unavailing

The main thrust of the UST's argument focuses on the decisions in *Bullard v. Blue Hills Bank* ("*Bullard*") and *Ritzen Grp., Inc. v. Jackson Masonry, LLC*

3

("*Ritzen*").  575 U.S. 496 (2015); 589 U.S. 35 (2020).  The UST claims that, by not citing these cases, the AHCCC has failed to argue the correct standards of law.  But this argument assumes that *Bullard* and *Ritzen* overruled previous bankruptcy finality law, which is not the case.

*Bullard* and *Ritzen* were applications of, or (at most) restatements of, bankruptcy finality law, not sources of new rules.  As a case in point, the core rule of *Bullard* was provided via a quote of a 1983 opinion: "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case…"  *Bullard,* 575 U.S. at 501 (quoting *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 FN 3 (2006), which itself quotes Justice Breyer in *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).  The operative principles *Bullard* and *Ritzen* rely on were well-established law prior to those cases.  *Bullard* and *Ritzen* applied the law; they did not upend it.

If we apply the reasoning of *Bullard-Ritzen* to the instant case, it is clear that the Settlement Order was not final.  Under *Bullard-Ritzen*, a decision is final when it "alters the status quo and fixes the rights and obligations of the parties."  *Ritzen*, 589 U.S. at 42 (quoting *Bullard*, 575 U.S. at 502).  The Settlement Order certainly altered the status quo, but it did not fix the rights and obligations of the parties.  The Settlement Fee Payment was a "material" term of the Settlement Agreement, an

obligation of the PEDD to pay the professional fees incurred by the AHCCC in the sum of $1.5 million. The Settlement Order explicitly adopted all obligations and terms of the settlement bargain even while denying the Settlement Fee Payment. *See* Settlement Order ¶ 2, APPX0029; *cf.* ¶ 10, APPX0031. As a result of the Settlement Order, the PEDD was left with the obligation to pay professional fees, but without the amount of those fees being settled[2]. The PEDD's obligations *were not fixed*. When rights and obligations are unsettled, they "cannot be typed 'final.'" *Ritzen*, 589 U.S. at 42. Following the Settlement Order, the PEDD and AHCCC were left in limbo as to the unresolved $1.5 million payment obligation. *Bullard-Ritzen* analysis leads to the same result, and the AHCCC's citation of earlier law merely took advantage of the wisdom of courts that had considered professional fees more specifically.

**B.    U.S. Trustee's Timeliness Argument is Belied by its own Authority**

In the context of discussing the piecemealing of settlement agreements, the UST briefly discusses *In re Rivermeadows Assocs., Ltd.* ("*Rivermeadows*"), an unpublished Tenth Circuit case. 185 F.3d 875, 1999 WL 448822 (10th Cir. 1999). In *Rivermeadows*, the bankruptcy court severed the consideration of attorney's fees from a settlement agreement, ordered the filing of a fee application, and then denied that fee application. *Id.* at *1-*2. Appeal was taken on the denial of the fee

---

[2] Even if the Settlement Order were construed to "fix" the obligation at $0, that was immediately undermined by the Settlement Order's invitation of a fee application to alter that obligation.

application.  *Id.* at *2.  Nevertheless, the Tenth Circuit ruled upon the argument that the bankruptcy court improperly piecemealed the settlement agreement.  *Id.* at *3. This means *the Tenth Circuit implicitly decided that it had jurisdiction over the settlement order even though the appeal was noticed after the later fee application*. The UST presents this case in support of its contentions on piecemealing settlements (and that issue is discussed below), but it completely contradicts the UST's position on timeliness of the appeal.  *Rivermeadows* contains a factual analog to the present case's timeliness issue, and the case fully supports finding that the present appeal is timely.

### C.    U.S. Trustee Fails to Meaningfully Distinguish On-Point Law on Finality

The UST attempts to distinguish *Perez v. AC Roosevelt* ("*Perez*"), stating that it "is a non-bankruptcy ruling issued well before *Bullard* and *Ritzen*."  774 F.3d 39 (2d Cir. 2013); UST Brief at 23 FN 5.  The fact that Perez is a non-bankruptcy case is irrelevant considering the requirement to interpret FRAP 4 and FRBP 8002 consistently.  Opening Brief at 33 (citing *In re Arrowhead Estates Development Co.*, 42 F.3d 1306, 1310-1311 (9th Cir. 1994)).  That requirement for consistency extends to all of the Rules incorporated and relied upon, including those which determine this case.

The UST also argues that *Perez* can be distinguished because it awarded fees and the Settlement Order did not, but the UST does not explain why this is relevant.

While "the finality of a decision [can depend] on which way the decision goes," one should not "slice the case too thin." *Bullard*, 575 U.S. at 506, 502. The *Bullard-Ritzen* analysis turns on whether the decision fixes the rights of parties, not the particulars of the fixation.  The UST's attempt to distinguish *Perez* is unpersuasive.

The UST challenges *Emergency Recovery Inc. v. Hufnagle* ("*Hufnagle*") as "inapposite because the appellants there filed clearly identified Rule 59 motions." 77 F.4th 1317 (11th Cir. 2023); UST Brief at 23 FN 5.  But this contention is belied by clear caselaw, unaddressed by the UST, that any motion to alter or amend the merits of a judgment is construed as a Rule 59 motion for purposes of appeal.

> "A postjudgment motion requesting alteration or amendment of the judgment but denominated a motion under a Rule other than Civil Rule 59(e) is generally treated as having been made under Rule 59(e), thereby extending the time to appeal, if the motion was filed within the 10–day[3] period allowed for a Rule 59(e) motion."

*Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 401 (2d Cir. 2000).

> "While the stipulation was not formally styled as a motion under rule 59, it may appropriately be treated as one. . . . . The stipulation, therefore, operated as a consent motion, and since it was filed within the time limit imposed by rule 59(e) and served to amend the final judgment, it was functionally equivalent to a rule 59(e) motion."

---

[3] *Lichtenberg v. Besicorp Grp. Inc.* was decided based on a prior version of the Fed. R. Civ. P.  Under the present Fed. R. Bankr. P., the time to file a motion to alter or amend a judgment is "no later than 14 days after entry of judgment." FRBP 9023.  The Fee Application was submitted on October 17, 2024, 14 days after the Settlement Order was signed on October 3, 2024.  A fee application can serve as a Rule 59(e) motion to a judgment when that judgement's merit determinations affect a party's right to recover fees.  *See Hufnagle*, 77 F.4th at 1326.

7

*Marine Midland Bank v. Slyman*, 995 F.2d 362, 365 (2d Cir. 1993).  This rule is quoted in *Hufnagle* itself.  *Hufnagle*, 77 F.4th at 1325 ("[A] post judgment motion will be considered a Rule 59(e) motion where it involves reconsideration of matters properly encompassed in a decision on the merits."; quotation marks omitted).

Finally, the UST tries to distinguish *In re Blasingame* because the bankruptcy court had "committed" itself to entering a subsequent order.  525 B.R. 675 (B.A.P. 6th Cir. 2015) (misidentified as Bankr. 6th Cir. in UST Brief); UST Brief at 23 FN 5.  The UST says that the present matter differs because the Bankruptcy Court "made no commitment whatsoever to award fees" and "merely permitted the discretionary filing of the Fee Application."   *Id.* But this is a poor distinction, because the Bankruptcy Court's invitation to submit a fee application can only reasonably be read to include a commitment to rule upon it if submitted.

**D.    Rule 58 Should be Applied and Rule 59 Does Apply to This Controversy to Toll the Period to Notice an Appeal**

The UST finds the Rules to be "labyrinthic" and "difficult to understand" in the context of the timeliness of this appeal.  UST Brief at 24 FN 6.  But the Rules are clear, and when the Rules are applied, the result follows logically.

By default, FRCP 58 does not apply to FRBP 9014 contested matters.[4] However, it is within the court's discretion to apply FRBP 7058 and FRCP 58 "at

---

[4] FRBP 9014(c).

any stage in a particular matter."[5]  The AHCCC's dispute with the PEDD likely would have been required to be brought as a class-action adversary proceeding in order to obtain relief on the merits – merits which include the material attorney fee payment provision.[6]  Therefore, because of the requirement for certain controversies to be brought as adversary proceedings in which Rule 58 applies, it is reasonable and equitable to apply Rule 58 and related caselaw to this controversy.  By applying Rule 58, direct caselaw supports finding that the Settlement Order was not final until entry of the Fee Order, and thus the AHCCC's right to appeal has been preserved.[7]

Regardless of whether Rule 58 applies, Rule 59 certainly does.[8]  The Fee Application sought a substantive amendment to the Settlement Order, which tolled the time for appeal until 14 days after resolution of that application.[9]  The policy behind this liberal interpretation is to prevent ambiguity in what constitutes a final judgment from depriving a party of the right to appeal when they relied on a reasonable interpretation of the court in good faith and acted within a timely manner to substantively challenge the judgment.[10]  That is precisely the situation the AHCCC finds itself in now.

---

[5] *Id.*
[6] FRBP 7001(a), (g)
[7] *See* Opening Brief at 33-34.
[8] FRBP 9023; *see* § I.C *supra*.
[9] FRAP 4(a)(4)(A)(iv); FRBP 8002(b)(1)(B); *see e.g. Hufnagle*, 77 F.4th at 1325.
[10] *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386 (1978).

The AHCCC relied on the Bankruptcy Court's stated reasoning and plain language that the $1.5 million payment could be permitted insofar as it was solely the payment of professional fees, and, in good faith, the AHCCC's counsel submitted a fee application for those fees to be paid believing that the application would satisfy the concerns of the Bankruptcy Court. The AHCCC was faced with an ambiguous ruling that may or may not have been erroneously piecemealing a settlement agreement, and the AHCCC operated on the good-faith presumption that the court would not make such an error intentionally. Courts should have the opportunity to adjudicate and potentially resolve complicated matters before appellate review, and the AHCCC's good faith here should not be punished.

## II. U.S. TRUSTEE CONFLATES SETTLEMENT PIECEMEALING WITH CONDITIONAL APPROVAL OF ENTIRE SETTLEMENT

The UST wrongly argues that piecemeal approval of a settlement is not only allowed but a cornerstone of Bankruptcy law and practice. In making this flagrantly incorrect argument, the UST conflates the wrongful modification of material terms of a settlement with the proper refusal of bankruptcy courts to approve illegal obligations, consider separately independent agreements presented in omnibus, or to pass upon obligations over which it lacks authority to enforce. Even when an agreement is conditionally approved, every element of the settlement bargain which is permissible under the Bankruptcy Code is approved or denied as a whole. In contrast, piecemealing involves the court unilaterally changing material terms of a

settlement bargain without a purpose required by the Bankruptcy Code. "[I]t is not a district judge's job to dictate the terms of a class settlement; he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." *In re Warner Communications Securities Litigation*, 798 F.3d 35, 37 (2d. Cir. 1986); *Deangelis v. Corzine*, 151 F.Supp.3d 356, 361-362 (S.D.N.Y. 2015). The settlement is a contract between its parties, and a deal is a deal. The UST makes this fundamental error throughout its argument.

For example, the UST states that, "Given insufficient facts from a faulty record to tell who was receiving the money, the bankruptcy court's denial of the payment provision was within its broad discretion." UST Brief at 30. This is wrong. It was within the Bankruptcy Court's broad discretion to deny *the entire agreement* and require the record to be corrected before approval. It was also within the Bankruptcy Court's discretion to approve the entire Settlement Agreement on the condition that only the portion that was payable as professional fees under the Plan and Bankruptcy Code could actually be remitted. Based on the language of the Settlement Opinion, it appeared to the AHCCC that the Bankruptcy Court was doing the latter: approving the settlement and requiring supplementation of the record via a fee application to determine the amount of the Settlement Fee Payment that was payable.

The UST states that "it was not an abuse of discretion for the bankruptcy court to deny the payment provision, to the extent it sought to pay specifically the Ad Hoc Committee." The payment was meant to preserve the committee members' equity with non-member corporate creditors by relieving members from bearing representation costs not borne by other settlement beneficiaries. This resolution, which the PEDD voluntarily accepted as an obligation, was a simple application of common fund principles.

The UST continues its erroneous reasoning that piecemealing is within the "general 'power to condition the approval of a settlement.'" UST Brief at 32 (citing *In re Wright*, 545 B.R. 541 (Bankr. S.D. Tex. 2016) ("*Wright*") and *In re Associated Gas & Elec. Co.*, 149 F.2d 996 (2d Cir. 1945) ("*Associated Gas & Elec.*")). These cases do not involve piecemealing. These cases involve conditional approval of an entire agreement and excising impermissible obligations, which are not what occurred here.

*Wright*[11] is a poor case for instruction on the present matter, with little discussion of relevant law and facts that are unrelated to the present situation. In that case, a debtor with two active bankruptcy estates, one in Chapter 7 and one in Chapter 13, sat between dueling trustees seeking ownership of shares in a small

---

[11] This *In re Wright* is a different *In re Wright* than cited by the Appellant in its opening brief. *Compare* 545 B.R. 541 (Bankr. S.D. Tex. 2016) in UST brief and here, *with* 566 B.R. 457 (6th Cir. BAP (Ohio) 2017) in Appellant's brief.

business. *Wright*, 545 B.R. at 541. Each trustee presented a settlement agreement claiming ownership of the shares, conditioned on the other relinquishing its claim. *Id.* Because the court found that the shares were property of the Chapter 7 estate, the Chapter 7 trustee's settlement was approved, on the condition that the Chapter 13 trustee relinquish claims to the shares. *Id.* at 559, 566. The choice between bargains was binary. *Id.* at 541 ("Before this Court is a pair of mutually exclusive motions…."). Neither agreement was piecemealed; the Chapter 7 settlement was approved as a whole, and the Chapter 13 settlement was rejected as a whole. *Id.* at 567. Finally, the case offers little guidance on how its result might apply to different facts, as the rule quoted by the UST is unaccompanied by citation or discussion. *See* UST Brief at 32; *cf. Wright*, 545 B.R. at 566.

*Associated Gas & Elec.* also deals with an inaptly compared situation: approval of a settlement conditioned upon it being confirmed as the plan of reorganization. UST Brief at 32; *cf. Associated Gas & Elec.*, 149 F.2d at 1001. Besides the fact situation and pre-plan-confirmation posture being entirely different from the present case, that settlement was also neither altered nor piecemealed. *Id.* The settlement was simply subjected to a creditor approval vote as a plan of reorganization. *Id. Associated Gas & Elec.* provides no guidance on the issues here, and even if it were on-point and supported the UST's argument, as a 1945 case it would be superseded by subsequent decisions.

13

The UST also cites cases where, it argues, a settlement was permissibly piecemealed. But reading these cases carefully reveals the distinction between substituting the court's preferences for material terms (which is wrong) and excising impermissible terms from consideration.

First, *In re Rivermeadows Assocs., Ltd.* ("*Rivermeadows*") is an unpublished opinion in which the court explicitly addressed a piecemealing argument. 185 F.3d, 1999 WL 448822, *supra*. The court narrowly held that a trustee could not waive the specific requirements of 11 U.S.C. § 506(b) for payment of attorney fees related to secured claims. *Id.* at *3. The court held so despite the rule against piecemealing, reasoning that the trustees could not bargain away statutory duties the bankruptcy court held over the estate, which the trustees did not have the right to waive. *Id.* at *3. The court did not endorse piecemealing and recognized that the bankruptcy court did not have "the power to condition its approval of a settlement upon judicial modification of what it perceives to be an 'unfair' negotiated … settlement *when those … grounds are unrelated to the substantive provisions of the Bankruptcy Code.*" *Id.* at *3 (quoting with added emphasis *In re Continental Airlines Corp.*, 907 F.2d 1500, 1508 (5th Cir. 1990)).

In the present case, the Settlement Agreement did not attempt to bargain away any statutory duty of the Bankruptcy Court. The Bankruptcy Court already reviewed and approved the Plan language divesting it of authority to review the hiring and

14

payment of professionals. Plan Art. II.B.4, APPX0235-0236. By submitting the Settlement Agreement for approval, the Bankruptcy Court was invited to review under the most deferential standards of reasonableness only. See Opening Brief at 21-24. This case is substantially unlike *Rivermeadows* and does not implicate the special circumstances it relied upon. The Court, therefore, should not be swayed by *Rivermeadows'* result.

*In re GOL Lineas Aéreas Inteligentes, S.A.* involves a distinction substantially like that in *Rivermeadows*, with the court disapproving portions of the settlement which would have constituted a violation of 11 U.S.C. § 1125(b). 659 B.R. 641, 656-657 (Bankr. S.D.N.Y. 2024). Even more critically, it was the debtors themselves who proposed the excision. *Id.* at 657 ("The Court here is faced with a binary choice framed by the Debtors: approve the Stipulations with the Lockup Provision intact, or approve them with the Lockup Provision excised."). No party was bound to or freed from terms without their agreement by any unilateral action of the bankruptcy court.

In *In re Hawks Prairie Investment, LLC*, the court approved, unaltered and without exception, every obligation involving the estate. 2010 WL 5257227 *4 (Bankr. W.D. Wash. Dec. 17, 2010). The excised portions involved releases between third parties which the court reasoned it did not have authority to approve or deny. *Id.*

15

In *In re Final Analysis, Inc.*, the court severed the omnibus approval of settlements related to adjusting the claims of multiple creditors and analyzed each party's settlement individually. 417 B.R. 332 (Bankr. D. Md. 2009). These disputes were independent and did not relate to each other except for the common subject matter and reasoning and their simultaneous submission in an omnibus motion. *Id.* at 334. As between the estate and each claimant, the full bargain was subject to an unmodified thumbs-up-or-down approval. *Id.* at 354. No material terms were unilaterally changed by the court, and disapproved settlements were referred back to the parties for amendment. *Id.* The court explicitly recognized that it had "no authority to force any of the Settling Claimants to accept a settlement on any other terms." *Id.*

The UST cites *In re Palacios* because of the apparent factual parallels. 2016 WL 361569 (Bankr. S.D. Tex. 2016). In that case, the bankruptcy court granted a settlement in part and denied it in part, specifically denying an "impermissible" attorney's fees provision. *Id.* at *14; UST Brief at 34. But the UST leaves out critical material details that change the analysis: the court denied the "impermissible" attorney's fees provision because 1) the case involved an open Chapter 7 estate, and 2) the attorney applying for *nunc pro tunc* employment under 11 U.S.C. § 330 failed to follow blackletter requirements of the local rules for such applications, including failing to notice creditors. *Id.* at *1, *13. Because the filing

attorney had been explicitly apprised of the local rules, the failure to follow them was considered vexatious and in violation of FRBP 9011. *Id.* at \*13.

The situation in *In re Palacios* is dissimilar to the present case. The AHCCC has followed all applicable rules and sought fees as a material term of a settlement under FRBP 9019, and those fees are not prohibited under any applicable portions of the Bankruptcy Code. The PEDD are post-confirmation, have no bankruptcy estate to preserve under the Code, and have approval from the Bankruptcy Court to hire and pay professionals without Code process or requirements. The law used in *In re Palacios* is not correctly applied to the present matter.

In all of these cases, the rules are clear: the bankruptcy court may excise an impermissible term (e.g. illegal under the Bankruptcy Code or unrelated to a debtor), but the court cannot substitute its judgment to alter the permissible material terms of a bargain between the parties. Applying these rules to the current case gives a clear result: the Bankruptcy Court could not approve the Settlement Agreement without approving the portion of the Attorney Fee Payment which was allowed to be paid as professional fees. The Bankruptcy Court explicitly said that the PEDD were permitted to pay the portion of the Settlement Fee Payment that was solely for professional fees. The Fee Application established that 100% of the Settlement Fee Payment would go to professional fees. The subsequent partial denial was an error

17

of law, and the present attempts to play games with the timeliness of this appeal are disfavored in law and policy.

The UST boldly asserts that the AHCCC's position is "mistaken" and unsupported by appellate law, but this contention is simply wrong. UST Brief at 35. The AHCCC cited *In re Air Crash Disaster at John F. Kennedy Intern. Airport...*, a Second Circuit case that is binding upon this court. 687 F.2d 626, 629 (2d Cir. 1982) ("It is beyond a district judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement"); Opening Brief at 14. As to the rest of the UST's contention, that the AHCCC's position is only supported by a "mere smattering" of reported decisions, the UST fares worse. The UST argues based on two reported trial decisions, two *unreported* trial decisions, and a single unpublished Tenth Circuit decision. And none of those cases support the UST's argument when scrutinized past the sentence quoted. *See* discussion above.

At the end of the day, the UST simply does not support its contention that the Settlement Fee Payment was impermissible. The UST mimics the sentiment of the Bankruptcy Court that the payment *might be* impermissible *if* it contains impermissible elements *as well as* the permissible elements. But the UST and the Bankruptcy Court were mistaken in arguing that the payment *did* contain impermissible elements, because the Fee Application demonstrated that it did not.

18

A rigorous reading of the law highlights the difference between excising impermissible terms and a court wrongfully taking unilateral action to modify a settlement term that it disagrees with. The law fully supports the AHCCC's position: the Bankruptcy Court's piecemealing of the Settlement Agreement was reversible error.

## III.  U.S. TRUSTEE FAILS TO ADDRESS PEDD'S POST-PETITION STATUS

The UST fails to address the AHCCC's argument that the PEDD have no bankruptcy estate to preserve. The UST blithely states, "No Bankruptcy Code provision authorizes reimbursement of an ad hoc committee's professional fees [from a bankruptcy estate] after plan confirmation." UST Brief at 6-7. But therein lies the heart of the matter: after a Chapter 11 plan confirmation, there is no bankruptcy estate. *In re Dahlgren Intern., Inc.*, 147 B.R. 393, 403 (N.D. Tex. 1992); 11 U.S.C. § 1141(b); Opening Brief at 18-19; Fee Application ¶ 9, APPX0154. Applying substantial contribution rules and 11 U.S.C. § 503, as the UST advocates, is completely unsupported by the law, nor by Celsius's Plan, nor that Plan's Bankruptcy Court-approved discharge of Bankruptcy Code obligations. In fact, the PEED is paying professionals millions of dollars in fees without Bankruptcy Court approval every month, something that was permitted under the Plan.

## IV. CONCLUSION

The AHCCC timely filed the present appeal. The fee provision contained in the Settlement Agreement, which generated in excess of $75 million in value for eligible AHCCC constituents, was a "material part" of the agreement, offered by the PEDD "as partial consideration for the releases…." The Celsius bankruptcy plan was approved by the Bankruptcy Court, and the debtor's estate ceased to exist. The Bankruptcy Court was obligated to approve – or deny – the entirety of the Settlement Agreement, so long as the provisions did not violate the Bankruptcy Code. They did not. The Settlement Agreement has otherwise been implemented, with millions of dollars in extra distributions having been made to eligible corporate creditors. Respectfully, this Court should reject the UST's position, direct the Bankruptcy Court to enforce the terms of the settlement agreement its entirety, and approve payment to the AHCCC in the sum of $1.5 million for its professional fees incurred.

DATED: March 14, 2025

**SARACHEK LAW FIRM**

/s/Zachary E. Mazur
Joseph E. Sarachek, Esq.
Zachary E. Mazur, Esq.
Paul J. Combe, Law Student Under Supervision
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
joe@saracheklawfirm.com
zachary@saracheklawfirm.com

20

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)

Form 417C

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because:

[**X**] this brief contains 4872 words, **or**

[ ] this brief uses mono-spaced typeface and contains ___ lines of text.

2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because:

[**X**] this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, **or**

[ ] this brief has been prepared in a mono-spaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*/s/Zachary E. Mazur*          March 14, 2025
Joseph E. Sarachek, Esq.          Dated
Zachary E. Mazur, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Southern District of New York by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that I have sent the foregoing document by email to the following parties:

**U.S. Trustee**
Andrew D. Velez-Rivera, andy.velez-rivera@usdoj.gov

**Sean Xue**
aceofangel2015@gmail.com

/s/Zachary E. Mazur
Zachary E. Mazur, Esq.
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
Tel: (646) 517-5420
zachary@saracheklawfirm.com